# Exhibit A

# Supreme Court of Pennsylvania
## Court of Common Pleas
## Civil Cover Sheet
# DAUPHIN COUNTY _____ County

Case 1:23-cv-00098-JPJ-PMS Document 1-0322 Filed 10/28/20 Page 2 of 83
To Atty

| For Prothonotary Use Only: | RECEIVED OFFICE OF PROTHONOTARY |
|---|---|
| Docket No: | |
| 2019 CV 4078 MM | 2019 JUN -6 AM 11:18 |

DAUPHIN COUNTY PENNA

*The information collected on this form is used solely for court administration purposes. This form does not supplement or replace the filing and service of pleadings or other papers as required by law or rules of court.*

**SECTION A**

**Commencement of Action:**
- [x] Complaint
- [ ] Writ of Summons
- [ ] Petition
- [ ] Transfer from Another Jurisdiction
- [ ] Declaration of Taking

| Lead Plaintiff's Name: **Z.E.G, a minor** | Lead Defendant's Name: **UPMC Pinnacle Hospitals** |
|---|---|

**Are money damages requested?** [x] Yes [ ] No

Dollar Amount Requested: (check one)
- [ ] within arbitration limits
- [x] outside arbitration limits

**Is this a *Class Action Suit*?** [ ] Yes [x] No

**Is this an *MDJ Appeal*?** [ ] Yes [x] No

Name of Plaintiff/Appellant's Attorney: Matthew Casey, Esquire and Iddo Harel, Esquire - Ross Feller Casey, LLP

- [ ] Check here if you have no attorney (are a Self-Represented [Pro Se] Litigant)

**SECTION B**

**Nature of the Case:** Place an "X" to the left of the **ONE** case category that most accurately describes your **PRIMARY CASE.** If you are making more than one type of claim, check the one that you consider most important.

**TORT** (do not include Mass Tort)
- [ ] Intentional
- [ ] Malicious Prosecution
- [ ] Motor Vehicle
- [ ] Nuisance
- [ ] Premises Liability
- [ ] Product Liability (does not include mass tort)
- [ ] Slander/Libel/ Defamation
- [ ] Other: _____

**MASS TORT**
- [ ] Asbestos
- [ ] Tobacco
- [ ] Toxic Tort - DES
- [ ] Toxic Tort - Implant
- [ ] Toxic Waste
- [ ] Other: _____

**PROFESSIONAL LIABLITY**
- [ ] Dental
- [ ] Legal
- [x] Medical
- [ ] Other Professional: _____

**CONTRACT** (do not include Judgments)
- [ ] Buyer Plaintiff
- [ ] Debt Collection: Credit Card
- [ ] Debt Collection: Other
- _____
- [ ] Employment Dispute: Discrimination
- [ ] Employment Dispute: Other
- _____
- [ ] Other: _____

**REAL PROPERTY**
- [ ] Ejectment
- [ ] Eminent Domain/Condemnation
- [ ] Ground Rent
- [ ] Landlord/Tenant Dispute
- [ ] Mortgage Foreclosure: Residential
- [ ] Mortgage Foreclosure: Commercial
- [ ] Partition
- [ ] Quiet Title
- [ ] Other: _____

**CIVIL APPEALS**
Administrative Agencies
- [ ] Board of Assessment
- [ ] Board of Elections
- [ ] Dept. of Transportation
- [ ] Statutory Appeal: Other
- _____
- [ ] Zoning Board
- [ ] Other: _____

**MISCELLANEOUS**
- [ ] Common Law/Statutory Arbitration
- [ ] Declaratory Judgment
- [ ] Mandamus
- [ ] Non-Domestic Relations Restraining Order
- [ ] Quo Warranto
- [ ] Replevin
- [ ] Other: _____

*Updated 1/1/2011*

**ROSS FELLER CASEY, LLP**
By:    Matthew A. Casey, Esquire
       Iddo Harel, Esquire
Attorney ID Nos.: 84443/209830
One Liberty Place, Suite 3450
1650 Market Street
Philadelphia, PA 19103
(215) 574-2000

RECEIVED
OFFICE OF
PROTHONOTARY

2019 JUN -6 AM 11: 18

DAUPHIN COUNTY
PENNA

*Attorneys for Plaintiffs*

| | |
|---|---|
| **RAVEN GRANT** and **ZAPHIER ELAM**, as Parents and Natural Guardians of **Z.E.G.**, a Minor 2400 Market Street, Apt C-64 Harrisburg, PA 17103 | COURT OF COMMON PLEAS DAUPHIN COUNTY, PENNSYLVANIA |
| *Plaintiffs* | Docket No.: 2019 CV 4072 MM |
| **v.** | |
| **UPMC PINNACLE HOSPITALS d/b/a UPMC PINNACLE HARRISBURG f/k/a PINNACLE HEALTH HOSPITAL, HARRISBURG HOSPITAL d/b/a PINNACLE HEALTH AT HARRISBURG HOSPITAL d/b/a PINNACLE HEALTH – HARRISBURG HOSPITAL** 111 S. Front Street Harrisburg, Pennsylvania, 17101 | CIVIL ACTION- PROFESSIONAL MEDICAL LIABILITY <br><br> JURY TRIAL DEMANDED |

## NOTICE TO PLEAD

### NOTICE

You have been sued in court. If you wish to defend against the claims set forth in the following pages, you must take action within twenty (20) days after this complaint and notice are served, by entering a written appearance personally or by attorney and filing in writing with the court your defenses or objections to the claims set forth against you. You are warned that if you fail to do so the case may proceed without you and a judgment may be entered against you by the court without further notice for any money claimed in the complaint or for any other claim or relief requested by the Plaintiff. You may lose money or property or other rights important to you.

YOU SHOULD TAKE THIS PAPER TO YOUR LAWYER AT ONCE. IF YOU DO NOT HAVE A LAWYER, GO TO OR TELEPHONE THE OFFICE SET FORTH BELOW TO FIND OUT WHERE YOU CAN GET LEGAL HELP.

**IF YOU CANNOT AFFORD TO HIRE A LAWYER, T +-HIS OFFICE MAY BE ABLE TO PROVIDE YOU WITH INFORMATION ABOUT AGENCIES THAT MAY OFFER LEGAL SERVICES TO ELIGIBLE PERSONS AT A REDUCED FEE OR NO FEE.**

Dauphin County Lawyer Referral Service
213 North Front Street
Harrisburg, PA 17101
(717) 232-7536

### AVISO

Le han demandado a used en la corte. Si usted quiere defenderse de estas demandas expuestas en las paginas siguientes, usted tiene veinte (20) dias de plazo al partir de la fecha de la demanda y la notificacion. Hace falta asentar una comparencia escrita o en persona o con un abogado y entregar a la corte en forma escrita sus defensas o sus objeciones a las demandas en contra de su persona. Sea avisado que si usted no se defiende, la corte tomara medidas y puede continuar la demanda en contra suya sin previo aviso o notificacion. Ademas, la corte puede decidir a favor del demandante y requiere que usted cumpla con todas las provisiones de esta demanda. Usted puede perder dinero o sus propiedades u otros derechos importantes para usted.

LLEVE ESTA DEMANDA A UN ABOGADO INMEDIATAMENTE, SI NO TIENE ABOGADO O SI NO TIENE EL DINERO SUFICIENTE DE PAGAR TAL SERVICIO, VAYA EN PERSONA O LLAME POR TELEFONO A LA OFICINA CUYA DIRECCION SE ENCUENTRA ESCRITA ABAJO PARA AVERIGUAR DONDE SE PUEDE CONSEGUIR ASISTENCIA LEGAL.

**ESTA OFICINA LO PUEDE PROPORCIONAR CON INFORMACION ACERCA DE EMPLEAR A UN ABOGADO. SI USTED NO PUEDE PROPORCIONAR PARA EMPLEAR UN ABOGADO, ESTA OFICINA PUEDE SER CAPAZ DE PROPORCIONARLO CON INFORMACION ACERCA DE LAS AGENCIAS QUE PUEDEN OFRECER LOS SERVICOS LEGALES A PERSONAS ELEGIBLES EN UN HONORARIO REDUCIDO NINGUN HONORARIO.**

Dauphin County Lawyer Referral Service
213 North Front Street
Harrisburg, PA 17101
(717) 232-7536

and
**UPMC PINNACLE F/K/A PINNACLE
HEALTH SYSTEM D/B/A WOMENS
OUTPATIENT HEALTH CENTER**
2645 N 3rd St Fl 4
Harrisburg, PA 17110
   and
**UPMC PINNACLE F/K/A PINNACLE
HEALTH SYSTEM**
409 South 2nd Street
Harrisburg, Pennsylvania, 17104

                    *Defendants*

:
:
:
:
:
:
:
:
:
:
:
:
:

RECEIVED
OFFICE OF
PROTHONOTARY

2019 JUN -6 AM 11: 18

DAUPHIN COUNTY
PENNA

## CIVIL ACTION COMPLAINT
## MEDICAL PROFESSIONAL LIABILITY ACTION

Plaintiffs Raven Grant and Zaphier Elam, individually and as parents and natural guardians of Z.E.G., a minor, by and through their undersigned counsel, Ross Feller Casey, LLP, bring this medical malpractice action against the above-named Defendants and demand damages in a sum in excess of the local arbitration limits, exclusive of pre-judgment interest, post-judgment interest and costs, upon the causes of action set forth below.

## INTRODUCTION

This is a catastrophic birth injury case arising from the plain mismanagement of the delivery of Ms. Raven Grant. At its core, what happened here is simple and indefensible: despite a long and growing list of potential risk factors and indications that her baby was in danger – including what even her physicians believed to be a **fetal cardiac arrhythmia** – her physicians stubbornly and aggressively pursued a vaginal delivery – while leaving virtually all of her care in the hands of an extremely junior and inadequately supervised young resident. As the list of red flags grew longer and longer – including high blood pressure, further fetal heart rate tracing abnormalities, and others -- this same young resident failed to appreciate what was happening. And when that resident's shift was over … the patient's care was handed off to yet

another extremely young resident (and a medical student). But by the time a more senior physician intervened, Ms. Grant and her baby were in even more dire straits – and once a c-section was finally called and the mother taken to the operating room, the baby was already so compromised and entrapped in his mother's pelvis that he was frankly lucky to have survived the ordeal.

## PARTIES AND JURISDICTIONAL FACTS

1.      Plaintiff Raven Grant is an adult individual and citizen, residing at 2400 Market Street, Apartment C-64, Harrisburg, PA 17103.

2.      Plaintiff Raven Grant is the mother and natural guardian of Z.E.G., a minor.

3.      Plaintiff Zaphier Elam is an adult individual and citizen, residing at 2400 Market Street, Apartment C-64, Harrisburg, PA 17103.

4.      Plaintiff Zaphier Elam is the father and natural guardian of Z.E.G., a minor.

5.      Plaintiffs Raven Grant and Zaphier Elam file this Complaint individually and on behalf of the minor-plaintiff, Z.E.G., in their capacity as parents and natural guardians of their son.

6.      Minor-plaintiff, Z.E.G. is permanently and catastrophically injured as a direct result of his delayed delivery due to Defendants' collective mismanagement of his mother's perinatal care leading up to his birth.

7.       Defendant, UPMC Pinnacle Hospitals, d/b/a/ UPMC Pinnacle Harrisburg f/k/a Pinnacle Health Hospitals, d/b/a Pinnacle Health at Harrisburg Hospital d/b/a Pinnacle Health – Harrisburg Hospital ("Harrisburg Hospital") is a partnership, corporation or other legal entity, organized and existing under the laws of the Commonwealth of Pennsylvania, with its principal place of business located at 111 S. Front Street, Harrisburg, Pennsylvania, 17101. At all relevant times, Harrisburg Hospital was engaged in the provision of medical care and services to the public, including minor-plaintiff and his mother, through its agents and employees. At all relevant times, Harrisburg Hospital owned, maintained, operated, and/or controlled a hospital and medical

practices and employed various physicians, midwives, interns, residents, fellows, nurses, physician assistants, nurse practitioners, technicians and other agents, servants, and employees who purportedly possessed skill and training for the purposes of providing medical care and services to patients, including plaintiff, in particular. The claims asserted against this Defendant are for the professional negligence of its actual, apparent and/or ostensible agents, servants and employees, who participated in the care of minor-plaintiff and his mother at Harrisburg Hospital, as described herein. The claims against this Defendant also include a claim for corporate (direct) negligence under Thompson v. Nason, 591 A.2d 703 (Pa. 1991), and its progeny of case law, including Welsh v. Bulger, 698 A.2d 581 (Pa. 1997) and Whittington v. Woods, 768 A.2d 1144 (Pa. Super. 2001). The claims asserted against this defendant include claims for its own negligence and the professional negligence of its agents, employees, and servants as stated more fully herein. Pursuant to Pa. R. Civ. P. 1042.3, a Certificate of Merit as to this defendant will be filed.

8.  Defendant, UPMC Pinnacle f/k/a Pinnacle Health System d/b/a Womens Outpatient Health Center ("WOHC") is a partnership, corporation or other legal entity, organized and existing under the laws of the Commonwealth of Pennsylvania, which owns, operates, and maintains a medical practice and employs physicians and other medical professionals for the purpose of rendering medical services, maintaining a place of business at 2645 N 3rd St Fl 4, Harrisburg, PA 17110. The claims asserted against this defendant include claims for its own negligence and the professional negligence of its agents, employees, and servants as stated more fully herein. Pursuant to Pa. R. Civ. P. 1042.3, a Certificate of Merit as to this defendant will be filed.

9.  Defendant, UPMC Pinnacle f/k/a Pinnacle Health System is a partnership, corporation or other legal entity, organized and existing under the laws of the Commonwealth of

Pennsylvania, which owns, operates, and maintains a medical practice and employs physicians and other medical professionals for the purpose of rendering medical services, maintaining a place of business at 2645 N 3rd St Fl 4, Harrisburg, PA 17110. The claims asserted against this defendant include claims for its own negligence and the professional negligence of its agents, employees, and servants as stated more fully herein. Pursuant to Pa. R. Civ. P. 1042.3, a Certificate of Merit as to this defendant will be filed.

10.     At all relevant times, Defendants and their agents, servants and employees were engaged in the practice of medicine, pursuing their respective specialties and/or health care duties, and were obligated to use the professional skill, knowledge and care which they possessed, and to pursue their professions in accordance with reasonably safe and accepted standards of medicine and professional care in general, and in their specialties in particular, as well as institutional standards of medical care, in their care and treatment of minor-plaintiff and his mother.

11.     At all relevant times hereto, Defendants engaged as their actual, apparent or ostensible agents, servants and/or employees various healthcare providers, physicians, midwives, residents, fellows, interns, physician assistants and nursing staff who at all times were acting within the course and scope of their agency and/or employment with Defendants and under their exclusive control. The Defendants are liable for the negligent acts or omissions of their authorized servants, employees, and actual or ostensible agents under theories of respondeat superior, master-servant, agency, and right of control. Defendants' agents also include those physicians, midwives, residents, fellows, interns, physician assistants and nurses who participated in, were consulted about or were otherwise responsible for, the evaluation, care, management and treatment of the condition of minor plaintiff and his mother, inclusive, whose names and/or handwriting appear in the medical chart, but are indecipherable and not known or knowable to plaintiffs after reasonable

investigation, or whose notes do not appear in the chart, but who were consulted about the condition and/or treatment of minor plaintiff and his mother, by other Defendants or their agents whose names do appear in the chart, and are known only to Defendants, and will require additional discovery from Defendants.

12.     Defendants are vicariously liable for injuries sustained as a result of the negligent acts and omissions of persons whose conduct was under their supervision, control or right of control, and which conduct increased the risk of and, in fact, did cause Z.E.G.'s catastrophic and permanent injuries and losses.

13.     At all relevant times, all Defendants acted directly and/or indirectly by and through their duly authorized agents, servants and employees, as described herein, who themselves were acting within the course and scope of their employment and/or agency with Defendants, including Michael Mullen, M.D., Kunali Dalal, M.D., Amanda Powell, D.O., Bryan Doverspike, D.O, Stephen Wagner, M.D., Brian Dunlap, C.R.N.A., Daniel McLaughlin, Cheryl Eckman, R.N., Michelle Denton, R.N., Sarah Beitz, R.N., Karie Baker, R.N., Susan Kephart, R.N., Tiffany Grandizio, R.N., Jessica Schabdach, R.N., Kaitlyn Wenner, Andrea Buchman, R.N., Allison Russaw, R.N., and Elizabeth Anderson, R.N., as well as the "CNM" or "CNMs" (if any) whose possibly purported involvement is referenced in the record. At all relevant times, minor plaintiff and his mother were under the medical care, treatment and attendance of Defendants, their actual, apparent and/or ostensible agents and employees, as defined herein, all of whom were acting within the course and scope of their employment or agency with Defendants, and under their right of control.

14.     At all relevant times, a physician-patient relationship existed between minor-plaintiff, his mother and Defendants.

15.    At all relevant times, Defendants had actual or constructive knowledge of the medical and professional care and treatment provided to minor-plaintiff and his mother.

16.    At all relevant times, the parents and natural guardians of the minor-plaintiff, Raven Grant and Zaphier Elam, relied on the knowledge, care, skill, treatment and advice of the Defendants in connection with the medical and professional care and treatment provided.

17.    The permanent and catastrophic injuries and damages suffered by Z.E.G. were caused solely and exclusively by the negligence of Defendants, their agents, servants and/or employees, and were due in no manner to any act or failure to act on the part of the minor-plaintiff or his parents.

18.    The amount in controversy exceeds the prevailing, local arbitration limits.

19.    Venue for this action is properly laid in Dauphin County as all of the medical care at issue was rendered in Dauphin County. Pa.R.Civ.P. 1006.

### OPERATIVE FACTS

20.    This case arises from the catastrophic neurological injuries suffered by Z.E.G.

21.    On the morning of November 9, 2015, Raven Grant was admitted to Harrisburg Hospital.

22.    Ms. Grant was and remained under the care of Defendants.

23.    Ms. Grant was admitted for management of her pregnancy, and at admission was documented to be beyond 40 weeks of pregnancy.

24.    At one week past her expected 40-week point, Raven Grant was admitted for a scheduled induction of labor.

25.    Ms. Grant's pregnancy history was documented to include potential indications of possible conditions arising from maternal blood pressure.

26.     The medical record is improperly and inadequately documented with regard to precise times that the physicians, nursing and other personnel were involved with the patient's care. While further discovery will be required in order to determine these facts, the existing records make clear that employees/agents named herein were responsible for the patient for long shifts throughout the admission – and that none of them failed to properly appreciate the significance of or document any appreciation of the patient's ever-growing list of concerning findings and red flags. With regard to the nursing staff, the chart is also inadequately documented with regard to the precise identities, involvement, and times thereof; however, any member of the nursing staff responsible for the patient during these periods acted in deviation from the standard of care by not properly appreciating, documenting, reporting and acting upon this ever-growing list of concerning findings and red flags, including not only to physician staff generally, but also in addition to attending medical staff specifically.

27.     At admission, Ms. Grant was extremely remote from vaginal delivery.

28.     After admission, induction was commenced.

29.     The patient was apparently admitted to the service of Dr. Mullen at approximately 0930-0949 on 11/9/15. From this point forward until approximately 1800 (according to the improper and incomplete documentation in the chart), the care was apparently managed by junior resident Dr. Doverspike, who persistently failed to appreciate and recognize the significance of the highly concerning potential indications, risk factors, and other facts as referenced below, in deviation from the standard of care. Likewise, the failure of Dr. Mullen to properly and timely supervise and ensure and/or appreciate the proper management was in deviation from the standard of care, as further pleaded below.

30. During the admission, Raven Grant was documented to have had elevated blood pressure readings as well as other concerning findings.

31. Defendants failed to provide timely and proper treatment or diagnostic testing related to hypertension or preeclampsia or her other concerning findings.

32. During the admission, Ms. Grant and the baby demonstrated repeated and/or progressive periods of non-reassuring indications, including on fetal and maternal monitoring.

33. During the admission, there were progressive non-reassuring indications including with regard to maternal vital signs, tachycardia, dyspnea, elevated blood pressure, and fever.

34. During the admission, there were repeated and/or progressive non-reassuring indications including with regard to fetal heart rate tracings and heart rate assessment, documented audible fetal arrhythmia, and/or maternal physical exam, vital signs and well-being.

35. Despite and without regard to the fetal and maternal condition, induction was commenced and pursued.

36. Indeed, as the failed induction progressed, defendants failed to properly appreciate and/or respond to the clear signs of a failed induction. Furthermore, the aggressive pursuit of vaginal delivery, including with Pitocin and otherwise, not only was improper and unappreciated, but further exacerbated the risks to the baby.

37. Despite and without regard to the fetal and maternal condition, defendants failed to timely and properly intervene to avert the risks to mother and child, including with respect to risks of fetal compromise, depletion of fetal reserves, cardiovascular function, failure/arrest of descent, entrapment, failed labor, protracted/slow labor, infection, hypertension, preeclampsia, impaired perfusion, abruption, and other risks as pleaded in additional detail herein.

38.     Despite and without regard to the fetal and maternal condition, defendants failed to timely and properly monitor the condition of mother and child, including with respect to risks of fetal compromise, depletion of fetal reserves, cardiovascular function, failure/arrest of descent, entrapment, failed labor, protracted/slow labor, infection, hypertension, preeclampsia, impaired perfusion, abruption, and other risks as pleaded in additional detail herein.

39.     Despite and without regard to the fetal and maternal condition, defendants failed to timely and properly ensure the delivery of the child, in order to avert the risks to mother and child, including with respect to risks of fetal compromise, depletion of fetal reserves, cardiovascular function, failure/arrest of descent, entrapment, failed labor, protracted/slow labor, infection, hypertension, preeclampsia, impaired perfusion, abruption, and other risks as pleaded in additional detail herein.

40.     During the day of November 10, 2010, there were further potential indications and risk of fetal and/or maternal compromise, including specifically fetal compromise, depletion of fetal reserves, cardiovascular function, failure/arrest of descent, entrapment, failed labor, protracted/slow labor, infection, hypertension, preeclampsia, impaired perfusion, abruption, and other risks as pleaded in additional detail herein.

41.     Still, after more than twenty-four hours of labor, induction continued to be pursued throughout the day and into the evening of November 10, even as these risks and indications progressed, persisted and worsened.

42.     Again, throughout the induction, defendants failed to properly appreciate and/or respond to the clear signs of a failed induction. Furthermore, the aggressive pursuit of vaginal delivery, including with Pitocin and otherwise, not only was improper and unappreciated, but further exacerbated the risks to the baby.

43. At or around 1800 (according to the improper and incomplete documentation in the chart), it appears that care was assumed by junior resident Dr. Wagner, and that at some point Dr. Dalal became aware of and involved in the patient's care as well. Drs. Wagner and/or Dalal likewise apparently failed to appreciate and recognize the significance of the highly concerning potential indications, risk factors, and other facts as referenced above and below, and thus the decision and execution of the c-section for this patient was delayed even further. These failures by Dr. Wagner and Dr. Dalal were in deviation from the standard of care, as further pleaded below. Likewise, the failure of Dr. Mullen to properly and timely supervise and ensure and/or appreciate the proper management was in deviation from the standard of care, as further pleaded below.

44. Despite and without regard to the fetal and maternal condition, a cesarean section was only belatedly call and the mother belatedly taken for surgery at 8:44 p.m. on November 10.

45. Once Ms. Grant was finally brought to the operating room, upon performing the cesarean section, the primary surgeon, Kunali Dalal, M.D. was unable to extract the head and deliver the baby.

46. After several attempts at extraction, the baby was finally delivered after a significant delay.

47. In order to effectuate delivery, it appears from the record that Dr. Powell was to assist with the release of the head, which was only accomplished after a long and unnecessary delay, in deviation from the standard of care by both.

48. Raven Grant was documented to have had, *inter alia*, chorioamnionitis and preeclampsia with severe features.

49.     Despite further evaluation and treatment, Z.E.G. suffered permanent catastrophic neurological and other injuries.

50.     Plaintiff-minor's catastrophic injuries were the result of defendants' mismanagement of the delivery, management and care of minor-plaintiff and his mother, as described in the respects herein.

51.     Z.E.G. continues to suffer the permanent effects of his devastating birth injury.

52.     As a direct result of defendants' negligence, Z.E.G. suffered permanent and catastrophic injuries to his brain and related disabilities and damages.

53.     Defendants undertook and/or assumed a duty to provide minor-plaintiff and his mother with timely and appropriate medical care, management and treatment to avoid the risk of harm and injury to him.

54.     Plaintiffs and their minor son relied on the knowledge, care, skill, treatment and advice of the Defendants.

55.     The carelessness and negligence of Defendants, individually, jointly and severally, as described herein, increased substantially the risk of harm to Z.E.G. and did, in fact, cause him to suffer catastrophic and permanently disabling physical injuries and other damages.

56.     As a direct result of the Defendants' collective negligence, minor-plaintiff and his mother did not receive a proper assessment, evaluation, work-up, diagnosis, management and treatment, which increased the risk of catastrophic injury and harm, which he has gone on to suffer.

57.     As a direct result of the negligence of Defendants, Z.E.G. needlessly suffered catastrophic and permanent injuries to the nerves, vessels, tissues, muscles and vital organs of his body, including his brain.

58.     As a direct result of the negligence of Defendants, Z.E.G. was exposed to an increased risk of harm and was caused to suffer the following complications and sequelae thereof:

a.     irreversible brain injury;
b.     neurologic devastation;
c.     brain damage;
d.     cognitive deficits;
e.     developmental delays;
f.     disfigurement;
g.     need for multiple interventions producing physical pain and discomfort;
h.     past and future physical pain and suffering;
i.     past and future mental anguish;
j.     past and future severe emotional distress;
k.     past and future embarrassment and humiliation;
l.     past and future loss of enjoyment of life and life's pleasures;
m.     past and future inability to participate in and/or perform activities of daily living, occupations and avocations;
n.     impaired earning capacity;
o.     loss of independence;
p.     past and future medical expenses for medications, medical and surgical care, therapy, services, equipment and/or other care required to treat, alleviate, minimize and/or otherwise treat his conditions and disabilities; and
q.     such other injuries documented in the medical records and evaluative reports of physicians, other medical and non-medical professionals who have provided care to Z.E.G. for the sequelae of his injuries.

59.     Had Defendants acted in compliance with accepted standards of care and treated minor-plaintiff and his mother in a timely and appropriate manner, he would not have suffered the catastrophic physical injuries and losses he did.

60.     The catastrophic injuries and losses of Z.E.G. were caused solely and exclusively by the negligent acts and omissions of Defendants, their agents, servants and employees, as described more specifically herein, and were not caused by any act or failure to act on the part of Z.E.G. or his parents.

61.     As a direct result of the negligence of Defendants, the minor-plaintiff and his parents and natural guardians, Raven Grant and Zaphier Elam, have suffered and/or will continue

to suffer substantial economic and non-economic injuries, damages and losses, including but not limited to past and future medical, rehabilitative and other expenses relating to Z.E.G.'s injuries.

## COUNT ONE - NEGLIGENCE
### Plaintiffs v. Harrisburg Hospital

The preceding and subsequent paragraphs are incorporated by reference as if fully set forth herein.

62.     The negligent acts and omissions of this defendant, both directly and by and through their actual, apparent and/or ostensible agents for whom they are derivatively liable, as defined herein, consisted of one or more of the following:

a.     failing to timely and properly recognize and/or appreciate the risks of the attempted plan for induction;

b.     failing to timely and properly monitor the patient with regard to the risks of the attempted plan for induction;

c.     failing to timely and properly recognize and/or appreciate indications of potential progressive fetal and/or maternal compromise, including with regard to maternal vital signs, tachycardia, dyspnea, chest tightness, elevated blood pressure, and fever;

d.     failing to timely and properly recognize and/or appreciate indications of potential progressive fetal and/or maternal compromise, including with regard to heart tracings, vital signs, diagnostic testing and/or patient complaints;

e.     failing to timely and properly recognize and/or appreciate the significance of the remoteness of delivery, risk of failed induction, risk of delayed delivery, and/or lack of reassuring progress;

f.     failing to timely and properly investigate, monitor, and work-up indications of potential progressive fetal and/or maternal compromise, including with regard to heart tracings, contraction monitoring via TOCO and/or IUPC, vital signs, diagnostic testing and/or patient complaints;

g.     failing to timely and properly respond to indications of potential progressive fetal and/or maternal compromise, including with regard to heart tracings, vital signs, diagnostic testing and/or patient complaints;

h.     failing to timely and properly  institute and implement a plan for the delivery, including with regard to early induction;

i.     failing to timely and properly deliver;

j.     failing to timely and properly order and perform cesarean section;

k.     failing to timely and properly anticipate the risk of a difficult extraction;

l.     failing to timely and properly assess, appreciate, address, correct, and/or respond to potential risks and indications of abnormal labor, protracted labor, failure/arrest of descent, entrapment, and/or failed induction;

m.  failing to timely and properly expedite delivery in the face of non-reassuring fetal heart tracings and other clinical findings concerning for fetal well-being and progressive *in utero* distress;

n.  failing to timely and properly take steps to stop induction;

o.  failing to timely and properly take steps to slow or stop contractions;

p.  failing to timely and properly evaluate, interpret, diagnose, manage and treat non-reassuring features on the fetal heart tracings;

q.  failing to timely and properly distinguish reassuring from non-reassuring features on the fetal heart tracings;

r.  failing to timely and properly recognize the absence of reassuring features on the fetal monitoring tracings;

s.  failing to timely and properly monitor temperature, blood pressure, vital signs, and/or clinical signs of potential compromise, distress, infection and/or instability;

t.  failing to timely and properly monitor for signs and symptoms of progressive fetal distress;

u.  failing to timely and properly monitor for signs and symptoms of preeclampsia;

v.  failing to timely and properly order and conduct monitoring of vital signs, laboratory results, and/or diagnostic testing with regard to the risk of infection;

w.  failing to timely and properly order and conduct monitoring of vital signs, laboratory results, and/or diagnostic testing with regard to the risk of preeclampsia;

x.  failing to timely and properly evaluate the appropriateness of and/or conduct intrauterine resuscitation measures in the setting of signs and symptoms of fetal distress and/or non-reassuring fetal heart tracings;

y.  failing to timely and properly evaluate the appropriateness of and/or conduct responses to findings on fetal monitoring and maternal evaluation, including with regard to fluids, resuscitation, positioning, labor & delivery medications, and/or anesthesia;

z.  failing to timely and properly document the medical chart with clinically pertinent findings;

aa.  failing to timely and properly administer and/or manage medications and interventions with regard to the progression of labor and delivery, including cervical ripening and/or pitocin;

bb.  failing to timely and properly administer and/or manage appropriate medications, including with regard to the risk of infection and antibiotics;

cc.  failing to timely and properly communicate clinically significant information and/or findings to the physician staff;

dd.  failing to timely and properly report clinically significant information and/or findings to the supervising physician or senior staff;

ee.  failing to timely and properly communicate clinically significant information and/or findings to the attending-level physician staff;

ff.  failing to timely and properly communicate clinically significant information and/or findings to the attending-level physician staff;

gg.  failing to timely and properly obtain evaluation by a physician and/or an attending-level physician;

hh.  failing to timely and properly assess and/or monitor fetal and maternal well-being and status, including with regard to fetal movement, reactivity,

variability, fluid status, acoustic stimulation, sleep/wake cycles, and/or responses to attempted interventions;

ii. failing to timely and properly conduct physical examination and evaluation of Raven Grant, including with regard to vaginal exam, contractions, and/or progress towards delivery;

jj. failing to timely and properly personally conduct patient evaluation;

kk. failing to timely and properly consult with the physician staff;

ll. failing to timely and properly consult with an attending-level physician;

mm. failing to timely and properly consult with appropriate specialists and/or transfer for such consultation, including obstetrics, neonatology, maternal fetal medicine, infectious disease, neurology, pediatrics, and/or critical care;

nn. failing to timely and properly supervise the resident physicians and/or nursing staff involved in the assessment, care and management of the patient, and clinical decision making;

oo. failing to timely and properly monitor the fetal heart rate;

pp. failing to timely and properly continuously monitor the fetal heart rate;

qq. failing to timely and properly order continuous fetal heart monitoring in the setting of non-reassuring fetal heart tracings and/or other clinical findings concerning for fetal distress;

rr. failing to timely and properly order and administer appropriate antibiotic therapy;

ss. failing to timely and properly formulate a timely and appropriate plan for delivery in the setting of signs and symptoms concerning for fetal intolerance to labor and/or fetal distress;

tt. failing to timely and properly instruct the physician, nursing and resident staff with respect to the circumstances under which an expedited cesarean section would be indicated;

uu. failing to timely and properly notify neonatology and anesthesia of the need to proceed to cesarean section;

vv. failing to timely and properly recognize and/or manage the risk of infection, including with regard to vaginal examination, rupture of membranes, labor induction, and/or placement of monitoring devices;

ww. failing to timely and properly conduct work-up and/or provide intervention for potential infection, including with regard to antibiotics, cultures, laboratory testing and/or diagnostic studies;

xx. failing to timely and properly conduct work-up and/or provide intervention for pregnancy induced hypertension and/or preeclampsia, including with regard to antihypertensives, laboratory testing and/or diagnostic studies;

yy. failing to timely and properly anticipate and prevent the deterioration of the patient's condition;

zz. failing to timely and properly implement and/or use appropriate automated tools or systems for evaluation and tracking of fetal and maternal well-being, including with regard to fetal monitoring and the evaluation of variability, accelerations, decelerations, reactivity, and/or heart rate;

aaa. failing to timely and properly prevent intrauterine deterioration, and/or decompensation;

bbb. failing to timely and properly supervise and instruct the resident, and nursing staff with respect to the proper monitoring, evaluation, management and treatment, as described more particularly herein;

ccc. failing to timely and properly adhere to and/or enforce necessary policies, procedures, guidelines and/or algorithms regarding the care of minor-plaintiff and his mother, as described more particularly herein.

63. At all relevant times, such defendant engaged as agents, servants and employees, physicians, midwives, physicians assistants, nurses, nurse practitioners, and ancillary staff involved in the care of minor-plaintiff and his mother, as identified herein, to provide medical care and treatment to minor-plaintiff and his mother, while acting within the course and scope of their agency and/or employment. Accordingly, this defendant is both directly and derivatively liable for the negligent acts and omissions of these individuals under principles of respondeat superior, master-servant, vicarious liability, agency and/or right of control.

64. As a direct and proximate result of the negligent acts and omissions of such defendant, Z.E.G. was exposed to an increased risk of harm and suffered catastrophic and permanent injuries and losses, as described herein.

WHEREFORE, Plaintiffs demand judgment against Defendants, individually, jointly and severally, and damages in an amount in excess of Fifty Thousand Dollars ($50,000.00), and in excess of the prevailing arbitration limits, exclusive of pre-judgment interest, and post-judgment interest and costs.

## COUNT TWO - CORPORATE NEGLIGENCE
### Plaintiffs v. Harrisburg Hospital

65. The preceding and subsequent paragraphs are incorporated by reference as if fully set forth herein.

66. In addition to the derivative and vicarious liability of Defendant Harrisburg Hospital for the negligent acts and omissions of its agents, servants and employees, as set forth in the preceding and following Counts, Harrisburg Hospital further owed direct and non-delegable

duties to minor-plaintiff and his mother under the tenets set forth in <u>Thompson v. Nason,</u> 591 A.2d 709 (Pa. 1991) and its progeny of case law, including <u>Welsh v. Bulger,</u> 698 A.2d 581 (Pa. 1997) and <u>Whittington v. Woods,</u> 768 A.2d 1144 (Pa. Super. 2001).

67.     Defendant Harrisburg Hospital's duties included: (1) a duty to use reasonable care in the maintenance of safe and adequate facilities and equipment; (2) a duty to select and retain only competent physicians; (3) a duty to oversee all persons who practice medicine within its walls as to patient care; and (4) a duty to formulate, adopt and enforce adequate rules and policies to ensure quality care for patients.

68.     Harrisburg Hospital had a duty to minor-plaintiff and his mother to exercise reasonable care in the appointment and reappointment of physicians, fellows, nurses and technicians.

69.     Harrisburg Hospital had a duty to its patients, and to minor-plaintiff and his mother, in particular, to provide reasonable and competent medical care and services and to avoid conduct that would increase the risk of harm and/or cause harm to its patients, including minor-plaintiff and his mother.

70.     It is believed and therefore averred that the physicians, nurses, and technical staff who participated in the care of minor-plaintiff and his mother, as identified herein, did not possess the requisite training, experience, technical skills and judgment to render proper care and services to minor-plaintiff and his mother.

71.     It is believed and, therefore averred, that Harrisburg Hospital was negligent in failing to properly determine the qualifications and proficiencies of the medical and/or nursing staff identified herein, which will require additional discovery.

72. Harrisburg Hospital knew or should have known that the staff identified herein were not qualified to provide competent medical care and treatment to its patients presenting with the clinical issues in this setting.

73. Harrisburg Hospital further had an obligation to formulate, adopt and enforce adequate policies and procedures to ensure the safe and appropriate treatment of its patients, such as minor-plaintiff and his mother.

74. The corporate negligence of Harrisburg Hospital arising out of the medical care and treatment provided and/or negligently not provided to minor-plaintiff and his mother, as described herein, consisted of the following:

    a.    failing to ensure that patients were timely evaluated and/or seen by physician staff;

    b.    failing to ensure that patients were timely evaluated and/or seen by attending-level physician staff;

    c.    failing to have physicians, midwives, specialists and/or nurses appropriate in number, training and/or experience to diagnose, attend to and treat plaintiff's mother, and to make appropriate and timely decisions regarding fetal monitoring, the monitoring and management of labor and delivery, and/or care of patients with potential infection and/or cardiovascular compromise;

    d.    failing to have physicians, midwives, specialists and/or nurses appropriate in number, training and/or experience to diagnose, attend to and treat plaintiff's mother, and timely and properly assess, appreciate, address, correct, and/or respond to potential risks and indications of abnormal labor, protracted labor, failure/arrest of descent, entrapment, and/or failed induction;

    e.    failing to ensure that minor-plaintiff and his mother received appropriate attention from fully and properly trained and experienced physicians, midwives, and nurses;

    f.    failing to select and retain physicians, midwives and nurses and other medical staff competent in recognizing, interpreting, diagnosing and managing signs, symptoms and/or risk factors of fetal distress, compromise, infection, hypertension/preeclampsia, and/or cardiovascular compromise;

    g.    failing to formulate, adopt and/or enforce appropriate rules, guidelines, policies, procedures or protocols with respect to the management of patients such as minor-plaintiff and his mother, including but not limited to those regarding:

(1) external and internal electronic fetal heart monitoring and assessment;

(2) definitions and terms for fetal heart rate monitoring, interpretation and assessment;

(3) induction of labor;

(4) Pitocin;

(5) cervical ripening;

(6) contraction monitoring;

(7) performance of a cesarean section secondary to non-reassuring maternal and/or fetal condition;

(8) diagnosis, assessment, management and treatment of intrauterine fetal distress;

(9) vital sign assessment;

(10) failure and/or arrest of descent;

(11) protracted, slow, abnormal and/or dysfunctional labor;

(12) head entrapment;

(13) temperature assessment;

(14) assessment for potential signs of infection;

(15) medication orders;

(16) antibiotic administration;

(17) on-call assignment and responsibility;

(18) entry and confirmation of orders, including for diagnostic evaluation and/or medications;

(19) diagnosis, assessment, management and treatment of maternal infection;

(20) diagnosis, assessment, management and treatment of maternal hypertension and/or preeclampsia;

(21) stocking and availability of antibiotics, including timely and proper order fulfillment;

(22) stocking and availability of antihypertensives, including timely and proper order fulfillment;

(23) timely notification of the resident and/or attending-level physician staff by the nursing staff of findings relating to maternal conditions, the progress of labor and/or fetal status, including fetal heart tracing assessment;

(24) resident/intern scope of practice and supervision;

(25) laboratory orders and/or testing, including CBC, cultures, and HELLP labs;

(26) charting and documentation of the medical record; and

(27) chain of command.

h. failing to oversee all persons who practice medicine within their walls as to patient care to ensure that the staff involved in the monitoring and evaluation of minor plaintiff and his mother were appropriately and adequately supervised;

i. failing to oversee all persons who practice medicine within their walls as to patient care to ensure the appropriate monitoring, interpretation,

documentation and reporting of minor-plaintiff and his mother's condition; and

j.     failing to use reasonable care in the maintenance of safe and adequate facilities and equipment for the treatment of minor plaintiff and his mother, including electronic fetal monitoring equipment, software and computer systems, to ensure an accurate assessment of fetal well-being and/or compromise; availability of timely and proper measures for work up and treatment for potential infection, including antibiotics and laboratory testing; availability of timely and proper measures for work up and treatment for hypertension/preeclampsia, including antihypertensives.

75.     In violation of the accepted standards of institutional care, Harrisburg Hospital did not have adequate policies or procedures in effect in November 2015 as described above, and/or if such policies were in effect, Harrisburg Hospital failed to ensure that their medical, resident, fellow, nursing and technician staff were aware of, familiar with and followed such policies.

76.     Harrisburg Hospital knew or should have known that it did not have adequate written policies and procedures in place, as described above.

77.     Harrisburg Hospital knew or should have known that its medical, resident, fellow, nursing and technician staff were not familiar with and/or failed to follow the hospital's written policies and procedures with respect to the matters described above, to the extent that they existed.

78.     The foregoing negligence of Harrisburg Hospital increased the risk of harm to Z.E.G.

79.     As a direct and proximate result of the corporate negligence of Harrisburg Hospital, as described herein, minor-plaintiff and his mother were deprived of necessary, timely and appropriate evaluation, diagnosis, treatment and management.

80.     As a direct and proximate result of the corporate negligence of Harrisburg Hospital, as described herein, Z.E.G. suffered catastrophic and permanent injuries and losses, as described herein.

WHEREFORE, Plaintiff demands judgment against Defendants, individually, jointly and severally, and damages in an amount in excess of Fifty Thousand Dollars ($50,000.00), and in excess of the prevailing arbitration limits, exclusive of pre-judgment interest, and post-judgment interest and costs.

## COUNT THREE – NEGLIGENCE

### Plaintiffs vs. UPMC Pinnacle f/k/a
### Pinnacle Health System d/b/a Womens Outpatient Health Center

81.    The preceding and subsequent paragraphs are incorporated by reference as if fully set forth herein.

82.    The negligent acts and omissions of this defendant, both directly and by and through their actual, apparent and/or ostensible agents for whom they are derivatively liable, as defined herein, consisted of one or more of the following:

a.    failing to timely and properly recognize and/or appreciate the risks of the attempted plan for induction;

b.    failing to timely and properly monitor the patient with regard to the risks of the attempted plan for induction;

c.    failing to timely and properly recognize and/or appreciate indications of potential progressive fetal and/or maternal compromise, including with regard to maternal vital signs, tachycardia, dyspnea, chest tightness, elevated blood pressure, and fever;

d.    failing to timely and properly recognize and/or appreciate indications of potential progressive fetal and/or maternal compromise, including with regard to heart tracings, vital signs, diagnostic testing and/or patient complaints;

e.    failing to timely and properly recognize and/or appreciate the significance of the remoteness of delivery, risk of failed induction, risk of delayed delivery, and/or lack of reassuring progress;

f.    failing to timely and properly investigate, monitor, and work-up indications of potential progressive fetal and/or maternal compromise, including with regard to heart tracings, contraction monitoring via TOCO and/or IUPC, vital signs, diagnostic testing and/or patient complaints;

g.    failing to timely and properly respond to indications of potential progressive fetal and/or maternal compromise, including with regard to heart tracings, vital signs, diagnostic testing and/or patient complaints;

h.    failing to timely and properly institute and implement a plan for the delivery, including with regard to early induction;

i.    failing to timely and properly deliver;

j. failing to timely and properly order and perform cesarean section;

k. failing to timely and properly anticipate the risk of a difficult extraction;

l. failing to timely and properly assess, appreciate, address, correct, and/or respond to potential risks and indications of abnormal labor, protracted labor, failure/arrest of descent, entrapment, and/or failed induction;

m. failing to timely and properly expedite delivery in the face of non-reassuring fetal heart tracings and other clinical findings concerning for fetal well-being and progressive *in utero* distress;

n. failing to timely and properly take steps to stop induction;

o. failing to timely and properly take steps to slow or stop contractions;

p. failing to timely and properly evaluate, interpret, diagnose, manage and treat non-reassuring features on the fetal heart tracings;

q. failing to timely and properly distinguish reassuring from non-reassuring features on the fetal heart tracings;

r. failing to timely and properly recognize the absence of reassuring features on the fetal monitoring tracings;

s. failing to timely and properly monitor temperature, blood pressure, vital signs, and/or clinical signs of potential compromise, distress, infection and/or instability;

t. failing to timely and properly monitor for signs and symptoms of progressive fetal distress;

u. failing to timely and properly monitor for signs and symptoms of preeclampsia;

v. failing to timely and properly order and conduct monitoring of vital signs, laboratory results, and/or diagnostic testing ·with regard to the risk of infection;

w. failing to timely and properly order and conduct monitoring of vital signs, laboratory results, and/or diagnostic testing with regard to the risk of preeclampsia;

x. failing to timely and properly evaluate the appropriateness of and/or conduct intrauterine resuscitation measures in the setting of signs and symptoms of fetal distress and/or non-reassuring fetal heart tracings;

y. failing to timely and properly evaluate the appropriateness of and/or conduct responses to findings on fetal monitoring and maternal evaluation, including with regard to fluids, resuscitation, positioning, labor & delivery medications, and/or anesthesia;

z. failing to timely and properly document the medical chart with clinically pertinent findings;

aa. failing to timely and properly administer and/or manage medications and interventions with regard to the progression of labor and delivery, including cervical ripening and/or pitocin;

bb. failing to timely and properly administer and/or manage appropriate medications, including with regard to the risk of infection and antibiotics;

cc. failing to timely and properly communicate clinically significant information and/or findings to the physician staff;

dd. failing to timely and properly report clinically significant information and/or findings to the supervising physician or senior staff;

ee. failing to timely and properly communicate clinically significant information and/or findings to the attending-level physician staff;

ff.    failing to timely and properly communicate clinically significant information and/or findings to the attending-level physician staff;

gg.    failing to timely and properly obtain evaluation by a physician and/or an attending-level physician;

hh.    failing to timely and properly assess and/or monitor fetal and maternal well-being and status, including with regard to fetal movement, reactivity, variability, fluid status, acoustic stimulation, sleep/wake cycles, and/or responses to attempted interventions;

ii.    failing to timely and properly conduct physical examination and evaluation of Raven Grant, including with regard to vaginal exam, contractions, and/or progress towards delivery;

jj.    failing to timely and properly personally conduct patient evaluation;

kk.    failing to timely and properly consult with the physician staff;

ll.    failing to timely and properly consult with an attending-level physician;

mm.    failing to timely and properly consult with appropriate specialists and/or transfer for such consultation, including obstetrics, neonatology, maternal fetal medicine, infectious disease, neurology, pediatrics, and/or critical care;

nn.    failing to timely and properly supervise the resident physicians and/or nursing staff involved in the assessment, care and management of the patient, and clinical decision making;

oo.    failing to timely and properly monitor the fetal heart rate;

pp.    failing to timely and properly continuously monitor the fetal heart rate;

qq.    failing to timely and properly order continuous fetal heart monitoring in the setting of non-reassuring fetal heart tracings and/or other clinical findings concerning for fetal distress;

rr.    failing to timely and properly order and administer appropriate antibiotic therapy;

ss.    failing to timely and properly formulate a timely and appropriate plan for delivery in the setting of signs and symptoms concerning for fetal intolerance to labor and/or fetal distress;

tt.    failing to timely and properly instruct the physician, nursing and resident staff with respect to the circumstances under which an expedited cesarean section would be indicated;

uu.    failing to timely and properly notify neonatology and anesthesia of the need to proceed to cesarean section;

vv.    failing to timely and properly recognize and/or manage the risk of infection, including with regard to vaginal examination, rupture of membranes, labor induction, and/or placement of monitoring devices;

ww.    failing to timely and properly conduct work-up and/or provide intervention for potential infection, including with regard to antibiotics, cultures, laboratory testing and/or diagnostic studies;

xx.    failing to timely and properly conduct work-up and/or provide intervention for pregnancy induced hypertension and/or preeclampsia, including with regard to antihypertensives, laboratory testing and/or diagnostic studies;

yy.    failing to timely and properly anticipate and prevent the deterioration of the patient's condition;

zz.    failing to timely and properly implement and/or use appropriate automated tools or systems for evaluation and tracking of fetal and

maternal well-being, including with regard to fetal monitoring and the evaluation of variability, accelerations, decelerations, reactivity, and/or heart rate;

aaa.   failing to timely and properly prevent intrauterine deterioration, and/or decompensation;

bbb.   failing to timely and properly supervise and instruct the resident, and nursing staff with respect to the proper monitoring, evaluation, management and treatment, as described more particularly herein;

ccc.   failing to timely and properly adhere to and/or enforce necessary policies, procedures, guidelines and/or algorithms regarding the care of minor-plaintiff and his mother, as described more particularly herein.

83.    At all relevant times, such defendant engaged as agents, servants and employees, physicians, midwives, physician assistants, nurses, nurse practitioners, and ancillary staff involved in the care of minor-plaintiff and his mother, as identified herein, to provide medical care and treatment to minor-plaintiff and his mother, while acting within the course and scope of their agency and/or employment. Accordingly, this defendant is both directly and derivatively liable for the negligent acts and omissions of these individuals under principles of respondeat superior, master-servant, vicarious liability, agency and/or right of control.

84.    As a direct and proximate result of the negligent acts and omissions of such defendant, Z.E.G. was exposed to an increased risk of harm and suffered catastrophic and permanent injuries and losses, as described herein.

WHEREFORE, Plaintiffs demand judgment against Defendants, individually, jointly and severally, and damages in an amount in excess of Fifty Thousand Dollars ($50,000.00), and in excess of the prevailing arbitration limits, exclusive of pre-judgment interest, and post-judgment interest and costs.

## COUNT FOUR – NEGLIGENCE

### Plaintiffs vs. UPMC Pinnacle f/k/a Pinnacle Health System

85. The preceding and subsequent paragraphs are incorporated by reference as if fully set forth herein.

86. The negligent acts and omissions of this defendant, both directly and by and through their actual, apparent and/or ostensible agents for whom they are derivatively liable, as defined herein, consisted of one or more of the following:

a. failing to timely and properly recognize and/or appreciate the risks of the attempted plan for induction;

b. failing to timely and properly monitor the patient with regard to the risks of the attempted plan for induction;

c. failing to timely and properly recognize and/or appreciate indications of potential progressive fetal and/or maternal compromise, including with regard to maternal vital signs, tachycardia, dyspnea, chest tightness, elevated blood pressure, and fever;

d. failing to timely and properly recognize and/or appreciate indications of potential progressive fetal and/or maternal compromise, including with regard to heart tracings, vital signs, diagnostic testing and/or patient complaints;

e. failing to timely and properly recognize and/or appreciate the significance of the remoteness of delivery, risk of failed induction, risk of delayed delivery, and/or lack of reassuring progress;

f. failing to timely and properly investigate, monitor, and work-up indications of potential progressive fetal and/or maternal compromise, including with regard to heart tracings, contraction monitoring via TOCO and/or IUPC, vital signs, diagnostic testing and/or patient complaints;

g. failing to timely and properly respond to indications of potential progressive fetal and/or maternal compromise, including with regard to heart tracings, vital signs, diagnostic testing and/or patient complaints;

h. failing to timely and properly institute and implement a plan for the delivery, including with regard to early induction;

i. failing to timely and properly deliver;

j. failing to timely and properly order and perform cesarean section;

k. failing to timely and properly anticipate the risk of a difficult extraction;

l. failing to timely and properly assess, appreciate, address, correct, and/or respond to potential risks and indications of abnormal labor, protracted labor, failure/arrest of descent, entrapment, and/or failed induction;

m. failing to timely and properly expedite delivery in the face of non-reassuring fetal heart tracings and other clinical findings concerning for fetal well-being and progressive *in utero* distress;

n. failing to timely and properly take steps to stop induction;

o. failing to timely and properly take steps to slow or stop contractions;

p. failing to timely and properly evaluate, interpret, diagnose, manage and treat non-reassuring features on the fetal heart tracings;

q. failing to timely and properly distinguish reassuring from non-reassuring features on the fetal heart tracings;

r.      failing to timely and properly recognize the absence of reassuring features on the fetal monitoring tracings;

s.      failing to timely and properly monitor temperature, blood pressure, vital signs, and/or clinical signs of potential compromise, distress, infection and/or instability;

t.      failing to timely and properly monitor for signs and symptoms of progressive fetal distress;

u.      failing to timely and properly monitor for signs and symptoms of preeclampsia;

v.      failing to timely and properly order and conduct monitoring of vital signs, laboratory results, and/or diagnostic testing with regard to the risk of infection;

w.      failing to timely and properly order and conduct monitoring of vital signs, laboratory results, and/or diagnostic testing with regard to the risk of preeclampsia;

x.      failing to timely and properly evaluate the appropriateness of and/or conduct intrauterine resuscitation measures in the setting of signs and symptoms of fetal distress and/or non-reassuring fetal heart tracings;

y.      failing to timely and properly evaluate the appropriateness of and/or conduct responses to findings on fetal monitoring and maternal evaluation, including with regard to fluids, resuscitation, positioning, labor & delivery medications, and/or anesthesia;

z.      failing to timely and properly document the medical chart with clinically pertinent findings;

aa.      failing to timely and properly administer and/or manage medications and interventions with regard to the progression of labor and delivery, including cervical ripening and/or pitocin;

bb.      failing to timely and properly administer and/or manage appropriate medications, including with regard to the risk of infection and antibiotics;

cc.      failing to timely and properly communicate clinically significant information and/or findings to the physician staff;

dd.      failing to timely and properly report clinically significant information and/or findings to the supervising physician or senior staff;

ee.      failing to timely and properly communicate clinically significant information and/or findings to the attending-level physician staff;

ff.      failing to timely and properly communicate clinically significant information and/or findings to the attending-level physician staff;

gg.      failing to timely and properly obtain evaluation by a physician and/or an attending-level physician;

hh.      failing to timely and properly assess and/or monitor fetal and maternal well-being and status, including with regard to fetal movement, reactivity, variability, fluid status, acoustic stimulation, sleep/wake cycles, and/or responses to attempted interventions;

ii.      failing to timely and properly conduct physical examination and evaluation of Raven Grant, including with regard to vaginal exam, contractions, and/or progress towards delivery;

jj.      failing to timely and properly personally conduct patient evaluation;

kk.      failing to timely and properly consult with the physician staff;

ll.      failing to timely and properly consult with an attending-level physician;

mm.     failing to timely and properly consult with appropriate specialists and/or transfer for such consultation, including obstetrics, neonatology, maternal fetal medicine, infectious disease, neurology, pediatrics, and/or critical care;

nn.     failing to timely and properly supervise the resident physicians and/or nursing staff involved in the assessment, care and management of the patient, and clinical decision making;

oo.     failing to timely and properly monitor the fetal heart rate;

pp.     failing to timely and properly continuously monitor the fetal heart rate;

qq.     failing to timely and properly order continuous fetal heart monitoring in the setting of non-reassuring fetal heart tracings and/or other clinical findings concerning for fetal distress;

rr.     failing to timely and properly order and administer appropriate antibiotic therapy;

ss.     failing to timely and properly formulate a timely and appropriate plan for delivery in the setting of signs and symptoms concerning for fetal intolerance to labor and/or fetal distress;

tt.     failing to timely and properly instruct the physician, nursing and resident staff with respect to the circumstances under which an expedited cesarean section would be indicated;

uu.     failing to timely and properly notify neonatology and anesthesia of the need to proceed to cesarean section;

vv.     failing to timely and properly recognize and/or manage the risk of infection, including with regard to vaginal examination, rupture of membranes, labor induction, and/or placement of monitoring devices;

ww.     failing to timely and properly conduct work-up and/or provide intervention for potential infection, including with regard to antibiotics, cultures, laboratory testing and/or diagnostic studies;

xx.     failing to timely and properly conduct work-up and/or provide intervention for pregnancy induced hypertension and/or preeclampsia, including with regard to antihypertensives, laboratory testing and/or diagnostic studies;

yy.     failing to timely and properly anticipate and prevent the deterioration of the patient's condition;

zz.     failing to timely and properly implement and/or use appropriate automated tools or systems for evaluation and tracking of fetal and maternal well-being, including with regard to fetal monitoring and the evaluation of variability, accelerations, decelerations, reactivity, and/or heart rate;

aaa.     failing to timely and properly prevent intrauterine deterioration, and/or decompensation;

bbb.     failing to timely and properly supervise and instruct the resident, and nursing staff with respect to the proper monitoring, evaluation, management and treatment, as described more particularly herein;

ccc.     failing to timely and properly adhere to and/or enforce necessary policies, procedures, guidelines and/or algorithms regarding the care of minor-plaintiff and his mother, as described more particularly herein.

87. At all relevant times, such defendant engaged as agents, servants and employees, physicians, midwives, physician assistants, nurses, nurse practitioners, and ancillary staff involved in the care of minor-plaintiff and his mother, as identified herein, to provide medical care and treatment to minor-plaintiff and his mother, while acting within the course and scope of their agency and/or employment. Accordingly, this defendant is both directly and derivatively liable for the negligent acts and omissions of these individuals under principles of respondeat superior, master-servant, vicarious liability, agency and/or right of control.

88. As a direct and proximate result of the negligent acts and omissions of such defendant, Z.E.G. was exposed to an increased risk of harm and suffered catastrophic and permanent injuries and losses, as described herein.

WHEREFORE, Plaintiffs demand judgment against Defendants, individually, jointly and severally, and damages in an amount in excess of Fifty Thousand Dollars ($50,000.00), and in excess of the prevailing arbitration limits, exclusive of pre-judgment interest, and post-judgment interest and costs.

**ROSS FELLER CASEY, LLP**

By: _/s/ Iddo Harel_
MATTHEW A. CASEY, ESQUIRE
IDDO HAREL, ESQUIRE
_Attorneys for Plaintiffs_

Dated: June 5, 2019

# Exhibit B

MICHAEL M. BADOWSKI, ESQUIRE
Pa. Supreme Court I.D. No. 32646
ANTHONY J. GABRIEL, ESQUIRE
Pa. Supreme Court I.D. No. 317315
MARGOLIS EDELSTEIN
3510 Trindle Road
Camp Hill, PA  17011
Telephone: (717) 760-7500
Facsimile: (717) 975-8124
E-mail: mbadowski@margolisedelstein.com



**Counsel for Defendants**

<table>
<tr><td colspan="2" align="center">IN THE COURT OF COMMON PLEAS<br>OF DAUPHIN COUNTY</td></tr>
<tr><td>RAVEN GRANT and ZAPHIER ELAM,<br>as Parents and Natural Guardians of<br>Z.E.G, a Minor,<br><br>               Plaintiffs<br><br>   v.<br><br>UPMC PINNACLE HOSPITALS d/b/a<br>UPMC PINNACLE HARRISBURG f/k/a<br>PINNACLE HEALTH HOSPITAL,<br>HARRISBURG HOSPITAL d/b/a<br>PINNACLE HEALTH AT HARRISBURG<br>HOSPITAL d/b/a PINNACLE HEALTH --<br>HARRISBURG HOSPITAL, <em>et al.</em>,<br><br>               Defendants</td><td>DOCKET NO. 2019-CV-4072<br><br><br>CIVIL ACTION - LAW<br><br><br><br>JURY TRIAL DEMANDED</td></tr>
</table>

TO:   **Dr. Bryan Doverspike, DO**
      Womens Healthcare of
      Clarion
      Clarion Health Complex
      24 Doctors Lane
      Ste 304
      Clarion, PA 16214

Stephen M. Wagner, M.D.
McGovern Medical
School Building
6431 Fannin Street
Suite 3.286
Houston, TX 77030

**Kunali Kashyap Dalal, M.D.**
RWJ Center for Women's
Health
1A Quakerbridge Plaza
Hamilton, NJ 08619

## **NOTICE TO DEFEND**

YOU HAVE BEEN SUED IN COURT. If you wish to defend against the claims set forth in the following pages, you must take action within twenty (20) days after this Complaint and Notice are served, by entering a written appearance personally or by attorney and filing in writing with the Court your defenses or objections to the claims set forth against you. You are warned that if you fail to do so the case may proceed without you and a judgment may be entered against you by the Court without further notice for any money claimed in the Complaint or for any other claim or relief requested by the Plaintiff. You may lose money or property or other rights important to you.

YOU SHOULD TAKE THIS PAPER TO YOUR LAWYER AT ONCE. IF YOU DO NOT HAVE A LAWYER, GO TO OR TELEPHONE THE OFFICE SET FORTH BELOW. THIS OFFICE CAN PROVIDE YOU WITH INFORMATION ABOUT HIRING A LAWYER.

IF YOU CANNOT AFFORD TO HIRE A LAWYER, THIS OFFICE MAY BE ABLE TO PROVIDE YOU WITH INFORMATION ABOUT AGENCIES THAT MAY OFFER LEGAL SERVICES TO ELIGIBLE PERSONS AT A REDUCED FEE OR NO FEE.

Dauphin County Lawyer Referral Service
213 N. Front Street
Harrisburg, PA   17101
717-232-7536

## **NOTICE**

### **CONCERNING MEDIATION OF ACTIONS PENDING BEFORE THE COURT OF COMMON PLEAS OF DAUPHIN COUNTY**

The Judges of the Court of Common Pleas of Dauphin County believe that mediation of lawsuits is a very important component of dispute resolution. Virtually all lawsuits can benefit in some manner from mediation.

The Court has adopted Dauphin County Local Rule l001 to encourage the use of mediation. This early alert enables litigants to determine the best time during the life of their lawsuit for a mediation session. The intent of this early alert is to help the parties act upon the requirement to consider good faith mediation at the optimal time.

The Dauphin County Bar Association provides mediation services and can be reached at 717-232-7536. Free mediation sessions for pro bono cases referred by MidPenn Legal Services are available through the DCBA.

## AVISO

USTED HA SIDO DEMANDADO/A EN CORTE. Si usted desea defenderse de las demandas que se presentan mas adelante en las siguientes paginas, debe tomar accion dentro de los proximos veinte (20) dias despues de la notificacion de esta Demanda y Aviso radicando personalmente o por medio de un abogado una comparecencia escrita y radicando en la Corte por escrito sus defensas de, y objecciones a, las demandas presentadas aqui en contra suya. Se le advierte de que si usted falla de tomar accion como se describe anteriormente, el caso puede proceder sin usted y un fallo por cualquier suma de dinero reclamada en la demanda o cualquier otra reclamacion o remedio solicitado por el demandante puede ser dictado en contra suya por la Corte sin mas aviso adicional. Usted puede perder dinero o propiedad u otros derechos importantes para usted.

USTED DEBE LLEVAR ESTE DOCUMENTO A SU ABOGADO INMEDIATAMENTE. SI USTED NO TIENE UN ABOGADO, LLAME 0 VAYA A LA SIGUIENTE OFICINA. ESTA OFICINA PUEDE PROVEERLE INFORMACION A CERCA DE COMO CONSEGUIR UN ABOGADO.

SI USTED NO PUEDE PAGAR POR LOS SERVICIOS DE UN ABOGADO, ES POSIBLE QUE ESTA OFICINA LE PUEDA PROVEER INFORMACION SOBRE AGENCIAS QUE OFREZCAN SERVICIOS LEGALES SIN CARGO 0 BAJO COSTO A PERSONAS QUE CUALIFICAN.

Dauphin County Lawyer Referral Service
213 N. Front Street
Harrisburg, PA   17101
717-232-7536

## AVISO

### REFERENCES A LA MEDIACIÔN DE LAS ACCIONES PENDIENTES ANTES LA CORTE DE SOPLICAS COMUNES DEL CONDADO DE DAUPHIN

Los jueces de la corte de sûplicas comunes del condado de Dauphin creen que la mediaciôn de pleitos es un componente muy importante de la resoluciôn del conflicto. Virtualmente todos los pleitos pueden beneficiar de cierta manera de la mediaciôn.

La code ha adoptado la regla local de condado de Dauphin 1001 para animar el use de la mediaciôn. Esta alarma temprana permite a litigantes determiner la mejor época durante la vida de su pleito para una sesiôn de la mediaciôn. El intento de esta alarma temprana es actuar sobre la mediaciôn de la buena fe en el tiempo óptimo.

La asociaciôn de la barra del condado de Dauphin proporciona servicios de la mediaciôn y se puede alcanzar en 717-232-7536. La sesiôn libre de la mediaciôn para los favorables

casos del bono se refinio por MidPenn que los servicios juridicos están disponibles con el DCBA.

MARGOLIS EDELSTEIN

By: _____

__June 24, 2020___
Date

MICHAEL M. BADOWSKI
ANTHONY J. GABRIEL
(Attorneys for Defendants)

MICHAEL M. BADOWSKI, ESQUIRE
Pa. Supreme Court I.D. No. 32646
ANTHONY J. GABRIEL, ESQUIRE
Pa. Supreme Court I.D. No. 317315
MARGOLIS EDELSTEIN
3510 Trindle Road
Camp Hill, PA  17011
Telephone: (717) 760-7500
Facsimile: (717) 975-8124
E-mail: mbadowski@margolisedelstein.com                    **Counsel for Defendants**

RECEIVED
OFFICE OF
PROTHONOTARY
DAUPHIN COUNTY
PENNA
2020 JUN 24  PM 12: 27

| | |
|---|---|
| IN THE COURT OF COMMON PLEAS OF DAUPHIN COUNTY | |
| RAVEN GRANT and ZAPHIER ELAM, as Parents and Natural Guardians of Z.E.G, a Minor,<br><br>                          Plaintiffs<br><br>        v.<br><br>UPMC PINNACLE HOSPITALS d/b/a UPMC PINNACLE HARRISBURG f/k/a PINNACLE HEALTH HOSPITAL, HARRISBURG HOSPITAL d/b/a PINNACLE HEALTH AT HARRISBURG HOSPITAL d/b/a PINNACLE HEALTH – HARRISBURG HOSPITAL, *et al.,*<br><br>                          Defendants | DOCKET NO. 2019-CV-4072<br><br>CIVIL ACTION - LAW<br><br>JURY TRIAL DEMANDED |

### COMPLAINT TO JOIN ADDITIONAL DEFENDANTS, KUNALI DALAL, M.D., BRYAN DOVERSPIKE, D.O. AND STEPHEN WAGNER, M.D.

AND NOW, come Defendants, UPMC Pinnacle Hospitals d/b/a UPMC Pinnacle Harrisburg f/k/a Pinnacle Health Hospital, Harrisburg Hospital d/b/a Pinnacle Health at Harrisburg Hospital d/b/a Pinnacle Health – Harrisburg Hospital, UPMC Pinnacle f/k/a Pinnacle Health System d/b/a Women's Outpatient Health Center and UPMC Pinnacle f/k/a Pinnacle Health System ("Pinnacle Defendants"), by and through their counsel of record, Margolis Edelstein, to hereby file the following Complaint to Join Additional Defendants Kunali Dulal, M.D., Bryan Doverspike, D.O. and Stephen Wagner, M.D., and in support thereof, aver as follows:

1.      Plaintiffs, Raven Grant and Zaphier Elam, as Parents and Natural Guardians of Z.E.G, a Minor, filed a Complaint with the Court of Common Pleas of Dauphin County under docket 2019-CV-4072 to which they affixed Certificates of Merits. Attached hereto as Exhibit "A" is a true and correct copy of Plaintiffs' Complaint with accompanying Certificates of Merit.

2.      In their Complaint, Plaintiffs seek damages on behalf of Minor, Z.E.G., based upon allegations of medical negligence "arising from the plain mismanagement of the delivery of Ms. Raven Grant" between November 9, 2015 and November 10, 2015. (Exhibit "A," Complaint).

3.      Additional Defendant, Kunali Dalal, M.D., a medical provider identified in Plaintiffs' Complaint, who, upon information and belief, is a licensed physician who was authorized to practice medicine in the Commonwealth of Pennsylvania at the time of Plaintiffs' relevant medical care.   (Exhibit "A," Complaint at ¶13).

4.      Additional Defendant, Bryan Doverspike, D.O., a medical provider identified in Plaintiffs' Complaint, who, upon information and belief, is a licensed physician who was authorized to practice medicine in the Commonwealth of Pennsylvania at the time of Plaintiffs' relevant medical care.   (Exhibit "A," Complaint at ¶13).

5.      Additional Defendant, Stephen Wanger, M.D., a medical provider identified in Plaintiffs' Complaint, who, upon information and belief, is a licensed physician who was authorized to practice medicine in the Commonwealth of Pennsylvania at the time of Plaintiffs' relevant medical care.   (Exhibit "A," Complaint at ¶13).

6.      In their Complaint, Plaintiffs assert one claim for vicarious professional negligence against each of the three Pinnacle Defendants and one claim for corporate

negligence against Harrisburg Hospital. (Exhibit "A," Complaint at Counts I, II, III and IV).

7. In their Complaint, Plaintiffs' claims against the Pinnacle Defendants are based, factually, upon the alleged actions and/or inactions of certain alleged agents, servants and/or employees:

> 13. At all relevant times, all Defendants acted directly and/or indirectly by and through their duly authorized agents, servants and employees, as described herein, who themselves were acting within the course and scope of their employment and/or agency with Defendants, including Michael Mullen, M.D., Kunali Dala, M.D. Amanda Powell, D.O., Bryan Doverspike, D.O., Stephen Wagner, M.D., Brian Dunlap, C.R.N.A., Daniel McLaughlin, Cheryl Eckman, R.N., Michelle Denton, R.N., Sarah Beitz, R.N., Karie Baker, R.N., Susan Kephart, R.N., Tiffany Grandizio, R.N., Jessica Schabdach, R.N., Kaitlyn Wenner, Andrea Buchman, R.N., Allison Russaw, R.N., and Elizabeth Anderson, R.N., as well as the "CNM" or "CNMs" (if any) whose possibly purported involvement is referenced in the record. At all relevant times, minor plaintiff and his mother were under the medical care, treatment and attendance of Defendants, their actual, apparent and/or ostensible agents and employees, as defined herein, all of whom were acting within the course and scope of their employment or agency with Defendants, and under their right of control." (Exhibit "A," Complaint at ¶13).

## COUNT I

8. Pinnacle Defendants incorporate by reference the allegations in Plaintiffs' Complaint, although denied, as if the same were set forth at length herein as well as the averments of paragraphs 1-7 herein.

9. Pinnacle Defendants expressly deny that Plaintiffs are entitled to any relief requested in their Complaint.

10.     However, to the extent that the allegations of negligence against Pinnacle Defendants, as set forth in Plaintiffs' Complaint, are proven at the time of trial, said allegations being specifically denied, Pinnacle Defendants hereby plead claims for indemnification and contribution from the Additional Defendants, Kunali Dalal, M.D., Bryan Doverspike, D.O. and Stephen Wagner, M.D.

11.     As these matters concern the practice of healthcare by licensed professionals, the demand of Pinnacle Defendants for contribution and/or indemnity constitutes a professional liability claim as contemplated under the rules governing professional liability actions.

WHEREFORE, Defendants, UPMC Pinnacle Hospitals d/b/a UPMC Pinnacle Harrisburg f/k/a Pinnacle Health Hospital, Harrisburg Hospital d/b/a Pinnacle Health at Harrisburg Hospital d/b/a Pinnacle Health – Harrisburg Hospital, UPMC Pinnacle f/k/a Pinnacle Health System d/b/a Women's Outpatient Health Center and UPMC Pinnacle f/k/a Pinnacle Health System, request indemnification and/or contribution from the Additional Defendants, Kunali Dalal, M.D., Bryan Doverspike, D.O. and Stephen Wagner, M.D., for any sums that may be recovered by the Plaintiffs in this action.

Respectfully submitted:

By: _____

__June 24, 2020__
Date

MARGOLIS EDELSTEIN
MICHAEL M. BADOWSKI
I.D. No. 32646
ANTHONY J. GABRIEL
I.D. No. 317315
3510 Trindle Road
Camp Hill, PA 17011
Telephone: (717) 760-7502
mbadowski@margolisedelstein.com
(*Counsel for Defendants*)

## VERIFICATION

I, Patrick J. Amice, have read the foregoing Joinder Complaint.   The factual statements contained therein are known by me and are true and correct to the best of my knowledge, information and belief.

This statement and verification is made subject to the penalties of 18 Pa. C.S.A. Section 4904, relating to unsworn falsifications to authorities, which provides that, if I knowingly make false averments, I may be subject to criminal penalties.

Date: _FEBRUARY 4, 2020_         _Patrick J. Amice_

                                               NAME

## CERTIFICATE OF COMPLIANCE

I hereby certify that this filing complies with the provisions of the *Case Records Public Access Policy of the Unified Judicial System of Pennsylvania* that require filing confidential information and documents differently than non-confidential information and documents.

Date: _6-24-2020_

By: _____

MARGOLIS EDELSTEIN

ANTHONY J. GABRIEL
Attorney I.D. No. 317315
3510 Trindle Road
Camp Hill, PA 17011
PHONE: 717-760-7501
FAX: 717-975-8124
agabriel@margolisedelstein.com

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that I served a true and correct copy of the foregoing on all parties or their counsel of record by placing the same in the United States mail at Camp Hill, Pennsylvania, first-class postage prepaid, on the 24th day of June, 2020, and addressed as follows:

Matthew A. Casey, Esquire
Iddo Harel, Esquire
Ross, Feller, Casey, LLP
One Liberty Place
Suite 3450
1650 Market Street
Philadelphia, PA 19103
*(Counsel for Plaintiffs)*

Kunali Kashyap Dalal, M.D.
RWJ Center for Women's Health
1A Quakerbridge Plaza
Hamilton, NJ 08619
***(via certified mail # 7016 2140 0000 9102 5754,
return receipt requested)***

Stephen M. Wagner, M.D.
McGovern Medical School Building
6431 Fannin Street
Suite 3.286
Houston, TX 77030
***(via certified mail # 7016 2140 0000 9102 5761,
return receipt requested)***

MARGOLIS EDELSTEIN

By: _____
Angela M. Gayman, CRP
Legal Assistant

# Exhibit C

*Caption amended*

**BURNS WHITE LLC**
BY:    Stuart T. O'Neal, III, Esquire
         M. Sean Maravich, Esquire
         Megan B. Kelleher, Esquire
100 Four Falls, Suite 515
1001 Conshohocken State Road
West Conshohocken, PA  19428
Phone: (484) 567-5700
Fax:    (484) 567-5701

*Attorneys for Additional Defendant,*
Bryan Doverspike, D.O.

| | |
|---|---|
| RAVEN GRANT and ZAPHIER ELAM, as Parents and Natural Guardians of Z.E.G., a Minor | COURT OF COMMON PLEAS DAUPHIN COUNTY |
| Plaintiffs | CIVIL ACTION - LAW |
| v. | |
| UPMC PINNACLE HOSPITALS d/b/a UPMC PINNACLE HARRISBURG f/k/a PINNACLE HEALTH HOSPITAL, HARRISBURG HOSPITAL d/b/a PINNACLE HEALTH AT HARRISBURG HOSPITAL d/b/a PINNACLE HEALTH – HARRISBURG HOSPITAL, UPMC PINNACLE f/k/a PINNACLE HEALTH SYSTEM d/b/a WOMENS OUTPATIENT HEALTH CENTER, and UPMC PINNACLE f/k/a PINNACLE HEALTH SYSTEM | NO. 2019-CV-4072 JURY TRIAL DEMANDED |
| Defendants, | |
| v. | |
| KUNALI DALAL, M.D., BRYAN DOVERSPIKE, D.O., and STEPHEN WAGNER, M.D. | |
| Additional Defendants, | |
| v. | |
| MICHAEL J. MULLEN, M.D. | |
| Additional Defendant. | |

## NOTICE TO DEFEND

TO:   MICHAEL J. MULLEN, M.D.

YOU HAVE BEEN SUED IN COURT.  If you wish to defend against the claims set forth in the following pages, you must take action within twenty (20) days after this Complaint and Notice are served, by entering a written appearance personally or by attorney and filing in writing with the Court your defenses or objections to the claims set forth against you.  You are warned that if you fail to do so the case may proceed without you and a judgment may be entered against you by the Court without further notice for any money claimed in the Complaint or for any other claim or relief requested by the Plaintiff.  You may lose money or property or other rights important to you.

YOU SHOULD TAKE THIS PAPER TO YOUR LAWYER AT ONCE.  IF YOU DO NOT HAVE A LAWYER, GO TO OR TELEPHONE THE OFFICE SET FORTH BELOW.  THIS OFFICE CAN PROVIDE YOU WITH INFORMATION ABOUT HIRING A LAWYER.

IF YOU CANNOT AFFORD A LAWYER, THIS OFFICE MAY BE ABLE TO PROVIDE YOU WITH INFORMATION ABOUT AGENCIES THAT MAY OFFER LEGAL SERVICES TO ELIGIBLE PERSONS AT A REDUCED FEE OR NO FEE.

DAUPHIN COUNTY LAWYER REFERRAL SERVICE
213 North Front Street
Harrisburg, PA 17101
(717) 232-7536

## AVISO

USTED HA SIDO DEMANDADO/A EN CORTE.  Si usted desea defenderse de las demandas que se presentan mas adelante en las siguientes paginas, debe tomar accion dentro de los proximos veinte (20) dias despues de la notificacion de esta Demanda y Aviso radicando personalmente o por medio de un abogado una comparecencia escrita y radicando en la Corte por escrito sus defensas de, y objecciones a, las demandas presentadas aqui en contra suya.  Se le advierte de que si usted falla de tomar accion como se describe anteriormente, el caso puede proceder sin usted y fallo por cualquier suma de dinero reclamada en la demanda o cualquier otra reclamacion o remedio solicitado por el demandante puede ser dictado en contra suya por la Corte sin mas aviso adicional.  Usted puede perder dinero o propriedad u otros derechos importantes para usted.

USTED DEBE LLEVAR ESTE DOCUMENTO A SU ABOGADO IMMEDIATEMENTE.  SI USTED NO TIENE UN ABOGADO, LLAME O VAYA A LA SIGUIENTE OFICINA.  ESTA OFFICINA PUEDE PROVEERLE INFORMACION A CERCA DE COMO CONSEGUIR UN ABOGADO.

SI USTED NO PUEDU PAGAR POR LOS SERVICIOS DE UN ABOGADO, ES POSIBLE QUE ESTA OFICINA LE PUEDA PROVEER INFORMACION SOBRE AGENCIAS QUE

OFREZCAN SERVICIOS LEGALES SIN CARGO O BAJO COSTO A PERSONAS QUE
CUALIFICAN.

DAUPHIN COUNTY LAWYER REFERRAL SERVICE
213 North Front Street
Harrisburg, PA 17101

**BURNS WHITE LLC**

Date: August 17, 2020           BY:

Stuart T. O'Neal, Esquire
M. Sean Maravich, Esquire
Megan B. Kelleher, Esquire
*Attorneys for Additional Defendant,*
*Bryan Doverspike, D.O.*

## NOTICE CONCERNING MEDIATION OF ACTIONS PENDING BEFORE THE COURT OF COMMON PLEAS OF DAUPHIN COUNTY

The Judges of the Court of Common Pleas of Dauphin County believe that mediation of lawsuits is a very important component of dispute resolution. Virtually all lawsuits can benefit in some manner from mediation.

The Court has adopted Dauphin County Local Rule 1001 to encourage the use of mediation. This early alert enables litigants to determine the best time during the life of their lawsuit for a mediation session. The intent of this early alert is to help the parties act upon the requirement to consider good faith mediation at the optimal time.

The Dauphin County Bar Association provides mediation services and can be reached at 717-232-7536. Free mediation sessions for pro bono cases referred by MidPenn Legal Services are available through the DCBA.

## AVISO REFERENCES A LA MEDIACION DE LAS ACCIONES PENDIENTES ANTES LA CORTE DE SOPLICAS COMUNES DEL CONDADO DE DAUPHIN

Los jueces de la corte de suplicas communes del condado de Dauphin creen que la mediacion de pleitos es un componente muy importante de la resolucion del conflict. Virtualmente todos los pleitos pueden beneficiar de cierta manera de la mediacion.

La code ha adoptado la regla local de condado de Dauphin 1001 para animar el use de le mediacion. Esta alarma temprana permite a litigantes determiner la major epoca durante la vida de su pleito para una session de la mediacion. El intent de esta alarma temprana es actuar sobre la mediacion de la buena fe en el tiempo optimo.

La asociacion de la barra del condado de Dauphin proporciona servicios de la mediacion y se puede alcanzar en 717-232-7536. La sesion libre de la mediacion para los favorables cases del bono se refinio por MidPenn que los servicios juridicos estan disponibles con el DCBA.

**BURNS WHITE LLC**

Date: _August 17, 2020_        BY: _____

Stuart T. O'Neal, Esquire
M. Sean Maravich, Esquire
Megan B. Kelleher, Esquire
*Attorneys for Additional Defendant,*
*Bryan Doverspike, D.O.*

**BURNS WHITE LLC**
BY:   Stuart T. O'Neal, III, Esquire
       M. Sean Maravich, Esquire
       Megan B. Kelleher, Esquire
100 Four Falls, Suite 515
1001 Conshohocken State Road
West Conshohocken, PA 19428
Phone: (484) 567-5700
Fax:    (484) 567-5701

*Attorneys for Additional Defendant,*
Bryan Doverspike, D.O.

| | | |
|---|---|---|
| RAVEN GRANT and ZAPHIER ELAM, as Parents and Natural Guardians of Z.E.G., a Minor | : : : | COURT OF COMMON PLEAS DAUPHIN COUNTY |
|             Plaintiffs | : : | CIVIL ACTION - LAW |
| v. | : : : | |
| UPMC PINNACLE HOSPITALS d/b/a UPMC PINNACLE HARRISBURG f/k/a PINNACLE HEALTH HOSPITAL, HARRISBURG HOSPITAL d/b/a PINNACLE HEALTH AT HARRISBURG HOSPITAL d/b/a PINNACLE HEALTH – HARRISBURG HOSPITAL, UPMC PINNACLE f/k/a PINNACLE HEALTH SYSTEM d/b/a WOMENS OUTPATIENT HEALTH CENTER, and UPMC PINNACLE f/k/a PINNACLE HEALTH SYSTEM | : : : : : : : : : : : : : : : | NO. 2019-CV-4072  JURY TRIAL DEMANDED |
|             Defendants, | : : | |
| v. | : : | |
| KUNALI DALAL, M.D., BRYAN DOVERSPIKE, D.O., and STEPHEN WAGNER, M.D. | : : : | |
|             Additional Defendants, | : : | |
| v. | : : | |
| MICHAEL J. MULLEN, M.D. | : : | |
|             Additional Defendant. | : | |

## JOINDER COMPLAINT OF ADDITIONAL DEFENDANT, BRYAN DOVERSPIKE, D.O. AGAINST MICHAEL J. MULLEN, M.D.

Additional Defendant, Bryan Doverspike, D.O. (hereinafter "Joining Additional Defendant" and/or "Dr. Doverspike"), by and through his counsel, Burns White LLC, hereby files a Joinder Complaint against Additional Defendant, Michael J. Mullen, M.D., pursuant to Pa. R.C.P. 2252. In support hereof, Joining Additional Defendant sets forth the following:

1. This medical malpractice action was instituted by the filing of a Complaint in the Court of Common Pleas of Dauphin County, Pennsylvania on June 6, 2019.

2. Plaintiffs' Complaint alleges, *inter alia*, that the various Defendants were negligent with regard to the care and treatment rendered to Raven Grant (Plaintiff-mother) and Z.E.G. (minor-Plaintiff) in November of 2015. *A true and correct copy of Plaintiffs' Complaint is attached hereto as Exhibit "A."*

3. Plaintiffs' Complaint further alleges that, as a result of Defendants' collective negligence, Z.E.G. has been caused to suffer, *inter alia*, irreversible brain injury, neurological devastation, brain damage, cognitive deficits, developmental delays, and disfigurement. *See* Exhibit "A" at ¶ 58.

4. On June 24, 2020, Defendants, UPMC Pinnacle Hospitals d/b/a UPMC Pinnacle Harrisburg f/k/a Pinnacle Health Hospital, Harrisburg Hospital d/b/a Pinnacle Health at Harrisburg Hospital d/b/a Pinnacle Health – Harrisburg Hospital, UPMC Pinnacle f/k/a Pinnacle Health System d/b/a Women's Outpatient Health Center, and UPMC Pinnacle f/k/a Pinnacle Health System (hereinafter "Pinnacle Defendants") filed a Joinder Complaint against Joining Additional Defendant as well as Additional Defendants Kunali Dalal, M.D. and Stephen Wagner, M.D.

5.      Pinnacle Defendants' Joinder Complaint seeks indemnification and contribution

from the Additional Defendants, including Joining Additional Defendant, to the extent that the

allegations of negligence against Pinnacle Defendants are proven at the time of trial. *See, a true*

*and correct copy of Pinnacle Defendants' Joinder Complaint, attached hereto as Exhibit "B," at*

¶ *10.*

6.      Pinnacle Defendants' Joinder Complaint is based upon the allegation in Plaintiffs'

Complaint that its agents, servants and employees include, *inter alia,* Michael Mullen, M.D., as

well as Additional Defendants, Kunali Dalal, M.D., Bryan Doverspike, DO., and Stephen Wagner,

M.D. *See* Exhibit "B" at ¶ 7 (quoting Exhibit "A" at ¶ 13).

7.      Upon information and belief, at all times relevant to the instant action, Michael J.

Mullen, M.D. (hereinafter "Dr. Mullen") was a physician specializing in obstetrics and gynecology

with a principal place of business at Defendant, Women's Outpatient Health Center, 2465 North

3rd Street, 4th floor, Harrisburg, PA 17110.

8.      Plaintiffs' Complaint alleges a deviation from the standard of care by Dr. Mullen

as follows:

> The patient was apparently admitted to the service of Dr. Mullen at
> approximately 0930-0949 on 11/9/15, From this point forward until
> approximately 1800 (according to the improper and incomplete
> documentation in the chart), the care was apparently managed by
> junior resident Dr. Doverspike, who persistently failed to appreciate
> and recognize the significance of the highly concerning potential
> indications, risk factors, and other facts as referenced below, in
> deviation from the standard of care. **Likewise, the failure of Dr.**
> **Mullen to properly and timely supervise and ensure and/or**
> **appreciate the proper management was in deviation from the**
> **standard of care, as further pleaded below.**

*See* Exhibit "A" at ¶ 29 (emphasis added).

> At or around 1800 (according to the improper and incomplete
> documentation in the chart), it appears that care was assumed by

junior resident Dr. Wagner, and that at some point Dr. Dalal became aware of and involved in the patient's care as well. Drs. Wagner and/or Dalal likewise apparently failed to appreciate and recognize the significance of the highly concerning potential indications, risk factors, and other facts as referenced above and below, and thus the decision and execution of the c-section for this patient was delayed even further. These failures by Dr. Wagner and Dr. Dalal were in deviation from the standard of care, as further pleaded below. **Likewise, the failure of Dr. Mullen to properly and timely supervise and ensure and/or appreciate the proper management was in deviation from the standard of care, as further pleaded below.**

*See* Exhibit "A" at ¶ 43 (emphasis added).

9.      Upon information and belief, Dr. Mullen rendered care and treatment to Plaintiff-mother on at least two (2) occasions prior to the delivery at issue at Defendant, UPMC Pinnacle f/k/a Pinnacle Health System d/b/a Women's Outpatient Health Center.

10.      Upon information and belief, Dr. Mullen was Plaintiff-mother's admitting and attending physician when she presented to Harrisburg Hospital for scheduled induction of labor on November 9, 2015.

11.      Upon information and belief, Dr. Mullen was the supervising physician for Joining Additional Defendant, Bryan Doverspike, D.O. for his shifts at issue on November 9, 2015 and November 10, 2015. As such, Dr. Mullen was responsible for the supervision of Dr. Doverspike at all times during the care and treatment at issue.

12.      Upon information and belief, the Consent for Induction of Labor signed by Plaintiff-mother and by Dr. Doverspike indicates that the procedure would be performed under the direction of Dr. Mullen.

13.      During the admission at issue, Dr. Mullen deviated from the standard of care in failing to properly and timely supervise and ensure and/or appreciate the proper management of Plaintiff-mother and/or minor-Plaintiff. *See* Exhibit "A."

14.     Pursuant to Pa. R.C.P. 1042.3(c)(2), Joining Additional Defendant hereby relies upon Plaintiffs' Certificates of Merit for the related acts of negligence that are the basis for this cause of action.

## COUNT I

### BRYAN DOVERSPIKE, D.O. v. MICHAEL J. MULLEN, M.D. –
### INDEMNIFICATION AND/OR CONTRIBUTION

15.     Joining Additional Defendant incorporates all preceding paragraphs as if fully set forth herein at length.

16.     Joining Additional Defendant avers that if the allegations contained in Plaintiffs' Complaint and/or Pinnacle Defendants' Joinder Complaint are proven to be true, said allegations being specifically denied, then Additional Defendant, Michael J. Mullen, M.D., is solely and/or jointly and separately liable and/or liable over Joining Additional Defendant for the claims of the Plaintiffs and/or Pinnacle Defendants, since the Plaintiffs' alleged injuries and/or losses were the result of the actions and/or omissions of Additional Defendant, Michael J. Mullen, M.D., and not the result of any acts and/or omissions of Joining Additional Defendant.

17.     Joining Additional Defendant hereby asserts the right to indemnification and/or contribution as against Michael J. Mullen, M.D., pursuant to the Uniform Contribution Among Tortfeasors Act, 42 Pa. C.S.A. § 8321, *et seq.*, and pursuant to common law, for the amount of any judgment entered in favor of the Plaintiffs and/or Pinnacle Defendants.

WHEREFORE, Joining Additional Defendant, Bryan Doverspike, D.O., demands judgment in his favor and against Plaintiffs, Pinnacle Defendants, and Additional Defendant, Michael J. Mullen, M.D.

Respectfully submitted:

**BURNS WHITE LLC**

Date: __August 17, 2020__          BY: _____

Stuart T. O'Neal, Esquire
M. Sean Maravich, Esquire
Megan B. Kelleher, Esquire
*Attorneys for Additional Defendant,*
*Bryan Doverspike, D.O.*

## **VERIFICATION**

I, M. Sean Maravich, Esquire, counsel for Bryan Doverspike, D.O., hereby certify that the

**Joinder Complaint** is true and correct to the best of my knowledge, information and belief.  I

understand that false statements made therein are made subject to the penalties of 18 Pa. C.S.A.

section 4904 (relating to unsworn falsification to authorities).


Date:  August 17, 2020          BY: _____

                                         M. Sean Maravich, Esquire

## CERTIFICATE OF COMPLIANCE

I, M. Sean Maravich, Esquire, hereby certify that this filing complies with the provisions

of the *Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the*

*Appellate and Trial Courts* that require filing confidential information and documents differently

than non-confidential information and documents.

Date:   August 17, 2020                      BY: _____

                                             M. Sean Maravich, Esquire

**BURNS WHITE LLC**
BY:   Stuart T. O'Neal, III, Esquire
         M. Sean Maravich, Esquire
         Megan B. Kelleher, Esquire
100 Four Falls, Suite 515
1001 Conshohocken State Road
West Conshohocken, PA 19428
Phone: (484) 567-5700
Fax:   (484) 567-5701

*Attorneys for Additional Defendant,*
Bryan Doverspike, D.O.

---

| | | |
|---|---|---|
| RAVEN GRANT and ZAPHIER ELAM, as Parents and Natural Guardians of Z.E.G., a Minor | : | COURT OF COMMON PLEAS DAUPHIN COUNTY |
| | : | |
| Plaintiffs | : | |
| | : | CIVIL ACTION - LAW |
| v. | : | |
| | : | |
| UPMC PINNACLE HOSPITALS d/b/a UPMC PINNACLE HARRISBURG f/k/a PINNACLE HEALTH HOSPITAL, HARRISBURG HOSPITAL d/b/a PINNACLE HEALTH AT HARRISBURG HOSPITAL d/b/a PINNACLE HEALTH – HARRISBURG HOSPITAL, UPMC PINNACLE f/k/a PINNACLE HEALTH SYSTEM d/b/a WOMENS OUTPATIENT HEALTH CENTER, and UPMC PINNACLE f/k/a PINNACLE HEALTH SYSTEM | : | NO. 2019-CV-4072 |
| | : | |
| | : | JURY TRIAL DEMANDED |
| Defendants, | : | |
| | : | |
| v. | : | |
| | : | |
| KUNALI DALAL, M.D., BRYAN DOVERSPIKE, D.O., and STEPHEN WAGNER, M.D. | : | |
| | : | |
| Additional Defendants, | : | |

v.

MICHAEL J. MULLEN, M.D.

                        Additional Defendant.

**CERTIFICATE OF SERVICE**

I, M. Sean Maravich, Esquire, hereby certify that on this 17th **day of August 2020**, I served

a true and correct copy of our **Joinder Complaint** upon the counsel listed below via USPS First

Class Mail:

Matthew A. Casey, Esquire
Iddo Harel, Esquire
Ross Feller Casey, LLP
One Liberty Place, Suite 3450
1650 Market Street
Philadelphia, PA 19103
*Attorneys for Plaintiffs*

Michael M. Badowski, Esquire
Anthony J. Gabriel, Esquire
Margolis Edelstein
3510 Trindle Road
Camp Hill, PA 17011
*Attorneys for Defendants,*
*UPMC Pinnacle Hospitals d/b/a UPMC Pinnacle Harrisburg*
*f/k/a Pinnacle Health Hospital, Harrisburg Hospital d/b/a Pinnacle Health at Harrisburg*
*Hospital d/b/a Pinnacle Health – Harrisburg Hospital, UPMC Pinnacle f/k/a pinnacle Health*
*System d/b/a Womens Outpatient Health Center, UPMC Pinnacle f/k/a Pinnacle Health System*

Kunali K. Dalal, M.D.
RWJ Center for Women's Health
1A Quakerbridge Plaza
Hamilton, NJ 08619

Jonathan B. Stepanian, Esquire
McQuaide Blasko
1249 Cocoa Avenue, Suite 210
Hershey, PA 17033
*Attorney for Additional Defendant,*
*Stephen Wagner, M.D.*

I, M. Sean Maravich, Esquire, further certify that a true and correct copy of the Joinder

Complaint will be served upon the following Additional Defendants *via sheriff:*

Michael J. Mullen, M.D.
PinnacleHealth Women's Outpatient Center
2465 North 3rd Street, 4th Floor
Harrisburg, PA 17110

**BURNS WHITE LLC**

By: _____
Stuart T. O'Neal, III, Esquire
M. Sean Maravich, Esquire
Megan B. Kelleher, Esquire
*Attorneys for Additional Defendant,*
*Bryan Doverspike, D.O.*

MCQUAIDE BLASKO, INC.       *Attorneys for Stephen Wagner, M.D.*
By:    Jonathan B Stepanian, Esquire
       Attorney I.D. No. 89147
       jbstepanian@mqblaw.com
       Janene M. Druck, Esquire
       Attorney I.D. No. 322721
       jmdruck@mqblaw.com
1249 Cocoa Avenue
Suite 210
Hershey, PA 17033
717-533-4444 (Phone)
717-533-2043 (Fax)



| | |
|---|---|
| RAVEN GRANT AND ZAPHIER ELAM, AS PARENTS AND NATURAL GUARDIANS OF Z.E.G., A MINOR, | IN THE COURT OF COMMON PLEAS OF DAUPHIN COUNTY, PENNSYLVANIA |
| Plaintiffs | NO. 2019-CV-4072 |
| v. | CIVIL ACTION – MEDICAL PROFESSIONAL LIABILITY ACTION |
| UPMC PINNACLE HOSPITALS D/B/A UPMC PINNACLE HARRISBURG F/K/A PINNACLE HEALTH HOSPITAL, HARRISBURG HOSPITAL D/B/A PINNACLE HEALTH AT HARRISBURG HOSPITAL D/B/A PINNACLE HEALTH - HARRISBURG HOSPITAL; UPMC PINNACLE F/K/A PINNACLE HEALTH SYSTEM D/B/A WOMENS OUTPATIENT HEALTH CENTER; UPMC PINNACLE F/K/A PINNACLE HEALTH SYSTEM, | JURY TRIAL DEMANDED |
| Defendants | |
| v. | |
| KUNALI DALAL, M.D.; BRYAN DOVERSPIKE, D.O.; and STEPHEN WAGNER, M.D., | |
| Additional Defendants | |

v.

MICHAEL J. MULLEN, M.D.,

Additional Defendant

## NOTICE TO DEFEND

**TO:  Michael Mullen, M.D.**

YOU HAVE BEEN SUED IN COURT. If you wish to defend against the claims set forth in the following pages, you must take action within twenty (20) days after this Complaint and Notice are served, by entering a written appearance personally or by attorney and filing in writing with the Court your defenses or objections to the claims set forth against you. You are warned that if you fail to do so the case may proceed without you and a judgment may be entered against you by the Court without further notice for any money claimed in the Complaint or for any other claim or relief requested by the Plaintiff. You may lose money or property or other rights important to you.

YOU SHOULD TAKE THIS PAPER TO YOUR LAWYER AT ONCE. IF YOU DO NOT HAVE A LAWYER, GO TO OR TELEPHONE THE OFFICE SET FORTH BELOW. THIS OFFICE CAN PROVIDE YOU WITH INFORMATION ABOUT HIRING A LAWYER.

IF YOU CANNOT AFFORD TO HIRE A LAWYER, THIS OFFICE MAY BE ABLE TO PROVIDE YOU WITH INFORMATION ABOUT AGENCIES THAT MAY OFFER LEGAL SERVICES TO ELIGIBLE PERSONS AT A REDUCED FEE OR NO FEE.

DAUPHIN COUNTY LAWYER REFERRAL SERVICE
213 North Front Street
Harrisburg, PA 17101
(717) 232-7536

2

### NOTICE
### CONCERNING MEDIATION OF ACTIONS PENDING BEFORE
### THE COURT OF COMMON PLEAS OF DAUPHIN COUNTY

The Judges of the Court of Common Pleas of Dauphin County believe that mediation of lawsuits is a very important component of dispute resolution. Virtually all lawsuits can benefit in some manner from mediation.

The Court has adopted Dauphin County Local Rule 1001 to encourage the use of mediation. This early alert enables litigants to determine the best time during the life of their lawsuit for a mediation session. The intent of this early alert is to help the parties act upon the requirement to consider good faith mediation at the optimal time.

The Dauphin County Bar Association provides mediation services and can be reached at 717-232-7536. Free mediation sessions for pro bono cases referred by MidPenn Legal Services are available through the DCBA.

## A V I S O

USTED HA SIDO DEMANDADO/A EN CORTE. Si usted desea defenderse de las demandas que se presentan más adelante en las siguientes páginas, debe tomar acción dentro de los próximos veinte (20) días después de la notificación de esta Demanda y Aviso radicando personalmente o por medio de un abogado una comparecencia escrita y radicando en la Corte por escrito sus defensas de, y objecciones a, las demandas presentadas aquí en contra suya. Se le advierte de que si usted falla de tomar acción como se describe anteriormente, el caso puede proceder sin usted y un fallo por cualquier suma de dinero reclamada en la demanda o cualquier otra reclamación o remedio solicitado por el demandante puede ser dictado en contra suya por la Corte sin más aviso adicional. Usted puede perder dinero o propiedad u otros derechos importantes para usted.

USTED DEBE LLEVAR ESTE DOCUMENTO A SU ABOGADO INMEDIATAMENTE. SI USTED NO TIENE UN ABOGADO, LLAME O VAYA A LA SIGUIENTE OFICINA. ESTA OFICINA PUEDE PROVEERLE INFORMACION A CERCA DE COMO CONSEGUIR UN ABOGADO.

SI USTED NO PUEDE PAGAR POR LOS SERVICIOS DE UN ABOGADO, ES POSIBLE QUE ESTA OFICINA LE PUEDA PROVEER INFORMACION SOBRE AGENCIAS QUE OFREZCAN SERVICIOS LEGALES SIN CARGO O BAJO COSTO A PERSONAS QUE CUALIFICAN.

DAUPHIN COUNTY LAWYER REFERRAL SERVICE
213 North Front Street
Harrisburg, PA 17101
(717) 232-7536

3

<u>AVISO</u>
<u>REFERENCES A LA MEDIACIÔN DE LAS ACCIONES PENDIENTES ANTES
LA CORTE DE SOPLICAS COMUNES DEL CONDADO DE DAUPHIN</u>

Los jueces de la corte de sûplicas comunes del condado de
Dauphin creen que la mediaciôn de pleitos es un componente muy
importante de la resoluciôn del conflicto. Virtualmente todos los pleitos
pueden beneficiar de cierta manera de la mediaciôn.

La code ha adoptado la regla local de condado de Dauphin 1001 para
animar el use de la mediaciôn. Esta alarma temprana permite a litigantes
determiner la mejor época durante la vida de su pleito para una sesiôn de la
mediaciôn. El intento de esta alarma temprana es actuar sobre la mediaciôn
de la buena fe en el tiempo óptimo.

La asociación de la barra del condado de Dauphin proporciona
servicios de la mediaciôn y se puede alcanzar en 717-232-7536. La
sesiôn libre de la mediaciôn para los favorables casos del bono se refinio
por MidPenn que los servicios juridicos están disponibles con el DCBA.

McQUAIDE BLASKO, INC.

Dated: __8/27/2020__          By: _____

Jonathan B. Stepanian, Esquire
Janene M. Druck, Esquire
Attorneys for Additional Defendant
Stephen Wagner, M.D.

4

MCQUAIDE BLASKO, INC.       *Attorneys for Stephen Wagner, M.D.*

By:    Jonathan B Stepanian, Esquire
        Attorney I.D. No. 89147
        jbstepanian@mqblaw.com
        Janene M. Druck, Esquire
        Attorney I.D. No. 322721
        jmdruck@mqblaw.com

1249 Cocoa Avenue
Suite 210
Hershey, PA 17033
717-533-4444 (Phone)
717-533-2043 (Fax)

| | |
|---|---|
| RAVEN GRANT AND ZAPHIER ELAM, AS PARENTS AND NATURAL GUARDIANS OF Z.E.G., A MINOR, | IN THE COURT OF COMMON PLEAS OF DAUPHIN COUNTY, PENNSYLVANIA |
|        Plaintiffs | NO. 2019-CV-4072 |
|        v. | CIVIL ACTION – MEDICAL PROFESSIONAL LIABILITY ACTION |
| UPMC PINNACLE HOSPITALS D/B/A UPMC PINNACLE HARRISBURG F/K/A PINNACLE HEALTH HOSPITAL, HARRISBURG HOSPITAL D/B/A PINNACLE HEALTH AT HARRISBURG HOSPITAL D/B/A PINNACLE HEALTH - HARRISBURG HOSPITAL; UPMC PINNACLE F/K/A PINNACLE HEALTH SYSTEM D/B/A WOMENS OUTPATIENT HEALTH CENTER; UPMC PINNACLE F/K/A PINNACLE HEALTH SYSTEM, | JURY TRIAL DEMANDED |
|        Defendants | |
|        v. | |
| KUNALI DALAL, M.D.; BRYAN DOVERSPIKE, D.O.; and STEPHEN WAGNER, M.D., | |
|        Additional Defendants | |

v.

MICHAEL J. MULLEN, M.D.,

      Additional Defendant

## COMPLAINT TO JOIN MICHAEL J. MULLEN, M.D. AS AN ADDITIONAL DEFENDANT

Additional Defendant Stephen Wagner, M.D. ("Dr. Wagner") files the following Complaint to Join Michael J. Mullen, M.D. as an Additional Defendant, and avers as follows in support thereof:

1. Plaintiffs filed the instant action by filing a Complaint in the Court of Common Pleas of Dauphin County on June 6, 2019.

2. The Plaintiffs' Complaint alleges, *inter alia*, that UPMC Pinnacle Hospitals d/b/a UPMC Pinnacle Harrisburg f/k/a Pinnacle Health Hospital, Harrisburg Hospital d/b/a Pinnacle Health at Harrisburg Hospital d/b/a Pinnacle Health – Harrisburg Hospital, UPMC Pinnacle f/k/a Pinnacle Health System d/b/a Women's Outpatient Health Center and UPMC Pinnacle f/k/a Pinnacle Health System ("Original Defendants") were independently negligent and/or vicariously liable for the alleged negligence of their agents, servants, or employees with regard to care and treatment provided to Plaintiff Raven Grant between November 9, 2015 and November 10, 2015. (See, Complaint, attached as Ex. A.)

3. Among the allegedly negligent individuals for whom the Plaintiffs claim the Original Defendants are liable are Dr. Wagner, Kunali Dalal, M.D., Bryan Doverspike, D.O., and Michael J. Mullen, M.D. (See, Ex. A, ¶13.)

2

4. The Original Defendants, on June 24, 2020, filed a Joinder Complaint joining Dr. Wagner, Kunali Dalal, M.D., Bryan Doverspike, D.O. as Additional Defendants to this action, claiming an entitlement to indemnity and contribution in the event the Plaintiffs' claims are proven at trial. (See, Joinder Complaint, attached as Ex. B.)

5. The Original Defendants did not join Michael J. Mullen, M.D. ("Dr. Mullen") as an Additional Defendant.

6. Dr. Mullen is, at all times relevant to this case, believed to have been a physician specializing in obstetrics and gynecology with a principal place of business at Defendant, UPMC Pinnacle f/k/a Pinnacle Health System d/b/a Women's Outpatient Health Center, 2465 North 3rd Street, 4th Floor, Harrisburg, PA 17110.

7. Within their Complaint, the Plaintiffs have alleged that Dr. Mullen engaged in conduct constituting a deviation from the standard of care that caused harm to Z.E.G., the Minor-Plaintiff.

8. For instance, the Plaintiffs have alleged, in part, as follows within their Complaint:

    a. "The patient was apparently admitted to the service of Dr. Mullen at approximately 0930-0949 on 11/9/15. From this point forward until approximately 1800 (according to the improper and incomplete documentation in the chart), the care was apparently managed by junior resident Dr. Doverspike, who persistently failed to appreciate and recognize the significance of the highly concerning potential indications, risk factors, and other facts as referenced below, in deviation from the standard of care. Likewise, **the failure of Dr. Mullen to properly and timely supervise and ensure and/or appreciate the proper management was in deviation from the**

3

standard of care, as pleaded further below." (Ex. A, ¶ 29 (emphasis added).)

b.   "At or around 1800 (according to the improper and incomplete documentation in the chart), it appears that care was assumed by junior resident Dr. Wagner, and that at some point Dr. Dalal became aware of and involved in the patient's care as well. Drs. Wagner and/or Dalal likewise apparently failed to appreciate and recognize the significance of the highly concerning potential indications, risk factors, and other facts as referenced above and below, and thus the decision and execution of the c-section for this patient was delayed even further. These failures by Dr. Wagner and Dr. Dalal were in deviation from the standard of care as further pleaded below. Likewise, **the failure of Dr. Mullen to properly and timely supervise and ensure and/or appreciate the proper management was in deviation from the standard of care, as further pleaded below.**"

9.      Paragraphs 1 through 64 and 81 through 88 of the Plaintiffs' Complaint are incorporated herein by reference, without admission as to the truth of those allegations.

10.     Pursuant to Pa.R.C.P. 1042.3(c)(2), Dr. Wagner relies on Plaintiffs' Certificates of Merit for the related acts of negligence that are the basis for this cause of action.

## COUNT I

### STEPHEN WAGNER, M.D. v. MICHAEL J. MULLEN, M.D. – INDEMNIFICATION AND/OR CONTRIBUTION

11.     Paragraphs 1 through 10 are incorporated by reference as though set forth herein at length.

12.     Dr. Wagner denies that he is liable to the Plaintiffs and/or Original Defendants in any respect.

4

13.     If the allegations and claims of the Plaintiffs' Complaint regarding Dr. Mullen's conduct are true, then Dr. Mullen is solely liable to the Plaintiffs, jointly and severally liable with, and/or liable over Dr. Wagner for indemnification and/or contribution for any award of damages in this matter since the Plaintiffs' alleged injuries and/or losses were the result of the actions and/or omissions of Additional Defendant, Dr. Mullen, and not the result of any acts or omission of Dr. Wagner.

14.     Dr. Wagner asserts the right to indemnification and/or contribution as against Dr. Mullen pursuant to the Uniform Contribution Among Joint Tortfeasors Act, 42 Pa.C.S.A. § 8321, *et seq.*, and pursuant to common law, for the amount of any judgment entered in favor of the Plaintiffs and/or Original Defendants.

WHEREFORE, Additional Defendant Stephen Wagner, M.D. respectfully requests that this Honorable Court enter judgment in his favor and against Plaintiffs, Original Defendants, and Additional Defendant Michael J. Mullen, M.D., and award him costs of suit together with such other relief as this Court deems just and appropriate.

McQUAIDE BLASKO, INC.

Dated: 8|27|2020          By: _____
                               Jonathan B. Stepanian, Esquire
                               Janene M. Druck, Esquire
                               Attorneys for Additional Defendant
                               Stephen Wagner, M.D.

## VERIFICATION

The undersigned verifies that as an Additional Defendant, I am authorized to make this verification in the within action; and that the factual statements made in the foregoing **Joinder Complaint of Additional Defendant Stephen Wagner, M.D. Against Michael J. Mullen, M.D.** are true and correct to the best of my knowledge, information, and belief. I understand that false statements made herein are subject to the penalties of 18 Pa. C.S.A. § 4904, related to unsworn falsification to authority.


Dated: 8/18/2020

Stephen Wagner, M.D.

| | |
|---|---|
| RAVEN GRANT and ZAPHIER ELAM, as Parents and Natural Guardians of Z.E.G., a Minor, | IN THE COURT OF COMMON PLEAS OF DAUPHIN COUNTY, PA |
| Plaintiffs | |
| | NO. 2019-CV-4072 |
| v. | |
| UPMC PINNACLE HOSPITALS d/b/a UPMC PINNACLE HARRISBURG f/k/a PINNACLE HEALTH HOSPITAL, HARRISBURG HOSPITAL d/b/a PINNACLE HEALTH AT HARRISBURG HOSPITAL d/b/a PINNACLE HEALTH-HARRISBURG HOSPITAL, UPMC PINNACLE f/k/a PINNACLE HEALTH SYSTEM d/b/a WOMENS OUTPATIENT HEALTH CENTER, and UPMC PINNACLE f/k/a PINNACLE HEALTH SYSTEM, | CIVIL ACTION – LAW |
| Defendants | |
| v. | |
| BRYAN DOVERSPIKE, D.O., STEPHEN M. WAGNER, M.D., and KUNALI KASHYPA DALAL, M.D., | |
| Additional Defendants | JURY TRIAL DEMANDED |
| v. | |
| MICHAEL MULLEN, M.D., | |
| Additional Defendant | |

## CERTIFICATE OF SERVICE

I, Jonathan B. Stepanian, attorney for Additional Defendant, Stephen M.

Wagner, M.D. in the above-captioned matter, hereby certify that a true and correct

copy of our Complaint to Join Michael J. Mullen, M.D. as an Additional Defendant

was sent by Electronic Mail or First Class Mail this 27th day of August 2020 to the

attorneys/parties of record:

Matthew A. Casey, Esquire
Iddo Harel, Esquire
Ross, Feller, Casey, LLP
One Liberty Place, Suite 3450
1650 Market Street
Philadelphia, PA 19103
**Attorneys for Plaintiffs**
**(Via Electronic Mail)**

Michael M. Badowski, Esquire
Anthony J. Gabriel, Esquire
Margolis Edelstein
3510 Trindle Road
Camp Hill, PA 17011
**Attorneys for Original Defendants**
**(Via Electronic Mail)**

Stuart O'Neal, III, Esquire
M. Sean Maravich, Esquire
Megan Kelleher, Esquire
Burns White, LLC
100 Four Falls, Suite 515
1001 Conshohocken State Road
West Conshohocken, PA 19428
**Attorneys for Addtl. Def. Bryan Doverspike, D.O.**
**(Via Electronic Mail)**

Kunali Kashyap Dalal, M.D.
RWJ Center for Women's Health
1A Quakerbridge Plaza
Hamilton, NJ 08619
**Additional Defendant**
**(Via First Class Mail)**

McQUAIDE BLASKO

By: *Jonathan B. Stepanian*
    Jonathan B. Stepanian

MCQUAIDE BLASKO, INC.
By:   Jonathan B. Stepanian, Esquire
      Attorney I.D. No. 89147
      jbstepanian@mqblaw.com
1249 Cocoa Avenue, Suite 210
Hershey, PA 17033
(717) 533-4444
(717) 533-2043 (fax)

Attorneys for Additional Defendant,
Stephen M. Wagner, M.D.

| | |
|---|---|
| RAVEN GRANT and ZAPHIER ELAM, as Parents and Natural Guardians of Z.E.G., a Minor, | IN THE COURT OF COMMON PLEAS OF DAUPHIN COUNTY, PA |
|         Plaintiffs | |
|    v. | NO. 2019-CV-4072 |
| UPMC PINNACLE HOSPITALS, et al. | CIVIL ACTION – LAW |
|         Defendants | |
|    v. | |
| BRYAN DOVERSPIKE, D.O., STEPHEN M. WAGNER, M.D., and KUNALI KASHYPA DALAL, M.D., | |
|         Additional Defendants | JURY TRIAL DEMANDED |
|    v. | |
| MICHAEL J. MULLEN, M.D., | |
|         Additional Defendant | |

## CERTIFICATE OF COMPLIANCE

I certify that this filing complies with the provisions of the *Case Records*

*Public Access Policy of the Unified Judicial System of Pennsylvania* that require

filing confidential information and documents differently than non-confidential information and documents.

Submitted by:  Jonathan B. Stepanian

Signature: *[signature]*

Name:     Jonathan B. Stepanian

Attorney No. (if applicable): 89147

# Exhibit D

IN THE UNITED STATES DISTRICT COURT
FOR THE
MDDLE DISTRICT OF PENNSYLVANIA

_____

Raven Grant and Zaphier Elam, as Parent )
and Natural Guardians of Z.E.G., )
 )
Plaintiffs, )
 )
      v. )
 )
UPMC Pinnacle Hospitals d/b/a UPMC Pinnacle )
Harrisburg f/k/a Pinnacle Health Hospital, Harrisburg )
Hospital d/b/a Pinnacle Health at Harrisburg Hospital )
d/b/a  Pinnacle Health, Harrisburg Hospital; )
Kunali Dalal, M.D.; Bryan Doverspike, D.O.; and )
Stephen Wagner, M.D, )
 )
Defendants. )
_____)

DECLARATION OF
<u>MEREDITH TORRES</u>

1.   I am a Senior Attorney in the General Law Division, Office of the General Counsel,

Department of Health and Human Services (the "Department").   I am familiar with the official

records of administrative tort claims maintained by the Department as well as with the system by

which those records are maintained.

2.   The Department has a Claims Office that maintains in a computerized database a

record of administrative tort claims filed with the Department, including those filed with respect

to federally supported health centers that have been deemed to be eligible for Federal Tort Claims

Act malpractice coverage.

3.   As a consequence, if an administrative tort claim had been filed with the Department

with respect to Hamilton Health Center, Inc., its approved delivery sites or its employees and/or

qualified contractors, a record of that filing would be maintained in the Claims Office database.

4.   I have caused a search of the Claims Office database to be conducted and found that no administrative tort claim was filed by Raven Grant and Zaphier Elam, as Parent and Natural Guardians of Z.E.G., and/or by an authorized representative relating to the medical care and services provided to Raven Grant and Z.E.G., by Hamilton Health Center, Inc., and Kunali Dalal, M.D.

5.   I have also caused a search of the Claims Office database to be conducted and found that no administrative tort claim was filed by UPMC Pinnacle Harrisburg f/k/a Pinnacle Health Hospital, et al., and/or by an authorized representative relating to the medical care provided by Kunali Dalal, M.D.

6.   I have also reviewed official Agency records and determined that Hamilton Health Center, Inc., was deemed eligible for Federal Tort Claims Act malpractice coverage effective January 1, 2014, and that its coverage has continued without interruption since that time.   The Secretary of Health and Human Services' authority to deem entities as Public Health Service employee under 42 U.S.C. § 233 (g) has been delegated to the Associate Administrator, Bureau of Primary Health Care, Health Resources and Services Administration.   A copy of the notification issued by the Associate Administrator, Bureau of Primary Health Care, Health Resources and Services Administration, Department of Health and Human Services to Hamilton Health Center, Inc., is attached to this declaration as Exhibit 1.

7.   I have also reviewed the employment records submitted by Hamilton Health Center, Inc., on behalf of the defendant, Dr. Kunali Dalal, and I have determined that Dr. Kunali Dalal was an employee of Hamilton Health Center, Inc., at all times of the incidents giving rise to the suit.

I declare under penalty of perjury that the foregoing is true and correct. 28 U.S.C.

§ 1746.

     Dated at Washington, DC, this 26th day of October, 2020

MEREDITH TORRES
Senior Attorney, Claims and Employment Law
General Law Division
Office of the General Counsel
Department of Health and Human Services

# DEEMING LETTER(S)

### Preview NDA

Notice Email    NDA    **NDA Letter**

---

**PREVIEW NDA**

| FTCA DEEMING NOTICE NO.:<br>1-F00000577-13-01 | GRANT NUMBER:<br>H80CS00659 |  |
|---|---|---|

HAMILTON HEALTH CENTER, INC.
1821 FULTON STREET
HARRISBURG, PA 17102-1522

Dear Jeannine D Peterson:

The Health Resources and Services Administration (HRSA), in accordance with the Federally Supported Health Centers Assistance Act (FSHCAA), as amended, sections 224(g)-(n) of the Public Health Service (PHS) Act, 42 U.S.C. §§ 233(g)-(n), deems HAMILTON HEALTH CENTER, INC. to be an employee of the PHS, for the purposes of section 224, effective 1/1/2014 through 12/31/2014.

Section 224(a) of the PHS Act provides liability protection under the Federal Tort Claims Act (FTCA), 28 U.S.C. §§ 1346(b), 2672, or by alternative benefits provided by the United States where the availability of such benefits precludes a remedy under the FTCA, for damage for personal injury, including death, resulting from the performance of medical, surgical, dental, or related functions by PHS employees while acting within the scope of such employment. This protection is exclusive of any other civil action or proceeding. Coverage extends to deemed entities and their (1) officers; (2) governing board members; (3) full- and part-time employees; and (4) contractors who are licensed or certified individual health care practitioners providing full-time services (i.e., on average at least 32½ hours per week for the entity for the period of the contract), or, if providing an average of less than 32½ hours per week of such service, are licensed or certified providers in the fields of family practice, general internal medicine, general pediatrics, or obstetrics/gynecology. Volunteers are neither employees nor contractors and therefore are not eligible for FTCA coverage under FSHCAA.

This Notice of Deeming Action (NDA) is also confirmation of medical malpractice coverage for both HAMILTON HEALTH CENTER, INC. and its covered individuals as described above. This NDA, along with documentation confirming employment or contractor status with the deemed entity, may be used to show liability coverage for damage for personal injury, including death, resulting from the performance of medical, surgical, dental, or related functions by PHS employees while acting within the scope of such employment.

In addition, FTCA coverage is comparable to an "occurrence" policy without a monetary cap. Therefore, any coverage limits that may be mandated by other organizations are met.

This action is based on the information provided in your FTCA deeming application, as required under 42 U.S.C. § 233(h), with regard to your entity's: (1) implementation of appropriate policies and procedures to reduce the risk of malpractice and litigation; (2) review and verification of professional credentials and privileges, references, claims history, fitness, professional review organization findings, and licensure status of health professionals; (3) cooperation with the Department of Justice (DOJ) in the defense of claims and actions to prevent claims in the future; and (4) cooperation with DOJ in providing information related to previous malpractice claims history.

Deemed health centers must continue to receive funding under Section 330 of the PHS Act, 42 U.S.C. § 254b, in order to maintain coverage as a deemed PHS employee. If the deemed entity loses its Section 330 funding, such coverage will end immediately upon termination of the grant. In addition to the relevant statutory and regulatory requirements, every deemed health center is expected to follow HRSA's FTCA-related policies and procedures, which may be found online at http://www.bphc.hrsa.gov.

For further information, please contact your HRSA Project Officer as listed on your Notice of Grant Award or the Bureau of Primary Health Care (BPHC) Help Line at 1-877-974-2742 or bphchelpline@hrsa.gov.

---

[ Close Window ]

📄 **Preview NDA**

Notice Email    NDA    **NDA Letter**

---

**PREVIEW NDA**

---

| | |
|---|---|
| **FTCA DEEMING NOTICE NO.:** <br> 1-F00000577-14-01 | **GRANT NUMBER:** <br> H80CS00659 |



**HAMILTON HEALTH CENTER, INC.**
**1821 FULTON STREET**
**HARRISBURG, PA17102-1522**

Dear Jeannine D Peterson:

The Health Resources and Services Administration (HRSA), in accordance with the Federally Supported Health Centers Assistance Act (FSHCAA), as amended, sections 224(g)-(n) of the Public Health Service (PHS) Act, 42 U.S.C. §§ 233(g)-(n), deems HAMILTON HEALTH CENTER, INC. to be an employee of the PHS, for the purposes of section 224, effective 1/1/2015 through 12/31/2015.

Section 224(a) of the PHS Act provides liability protection under the Federal Tort Claims Act (FTCA), 28 U.S.C. §§ 1346(b), 2672, or by alternative benefits provided by the United States where the availability of such benefits precludes a remedy under the FTCA, for damage for personal injury, including death, resulting from the performance of medical, surgical, dental, or related functions by PHS employees while acting within the scope of such employment. This protection is exclusive of any other civil action or proceeding. Coverage extends to deemed entities and their (1) officers; (2) governing board members; (3) full- and part-time employees; and (4) contractors who are licensed or certified individual health care practitioners providing full-time services (i.e., on average at least 32½ hours per week for the entity for the period of the contract), or, if providing an average of less than 32½ hours per week of such service, are licensed or certified providers in the fields of family practice, general internal medicine, general pediatrics, or obstetrics/gynecology. Volunteers are neither employees nor contractors and therefore are not eligible for FTCA coverage under FSHCAA.

This Notice of Deeming Action (NDA) is also confirmation of medical malpractice coverage for both HAMILTON HEALTH CENTER, INC. and its covered individuals as described above. This NDA, along with documentation confirming employment or contractor status with the deemed entity, may be used to show liability coverage for damage for personal injury, including death, resulting from the performance of medical, surgical, dental, or related functions by PHS employees while acting within the scope of such employment.

In addition, FTCA coverage is comparable to an "occurrence" policy without a monetary cap. Therefore, any coverage limits that may be mandated by other organizations are met.

This action is based on the information provided in your FTCA deeming application, as required under 42 U.S.C. § 233(h), with regard to your entity's: (1) implementation of appropriate policies and procedures to reduce the risk of malpractice and litigation; (2) review and verification of professional credentials and privileges, references, claims history, fitness, professional review organization findings, and licensure status of health professionals; (3) cooperation with the Department of Justice (DOJ) in the defense of claims and actions to prevent claims in the future; and (4) cooperation with DOJ in providing information related to previous malpractice claims history.

Deemed health centers must continue to receive funding under Section 330 of the PHS Act, 42 U.S.C. § 254b, in order to maintain coverage as a deemed PHS employee. If the deemed entity loses its Section 330 funding, such coverage will end immediately upon termination of the grant. In addition to the relevant statutory and regulatory requirements, every deemed health center is expected to follow HRSA's FTCA-related policies and procedures, which may be found online at http://www.bphc.hrsa.gov.

For further information, please contact your HRSA Project Officer as listed on your Notice of Grant Award or the Bureau of Primary Health Care (BPHC) Help Line at 1-877-974-2742 or bphchelpline@hrsa.gov.

---

Close Window

---

📄 Preview NDA

Notice Email    NDA    **NDA Letter**

| PREVIEW NDA |
|---|

FTCA DEEMING NOTICE NO.:
1-F00000577-15-01

GRANT NUMBER:
H80CS00659



**HAMILTON HEALTH CENTER, INC.**
**1821 FULTON STREET**
**HARRISBURG, PA17102-1522**

Dear Jeannine D Peterson:

The Health Resources and Services Administration (HRSA), in accordance with the Federally Supported Health Centers Assistance Act (FSHCAA), as amended, sections 224(g)-(n) of the Public Health Service (PHS) Act, 42 U.S.C. §§ 233(g)-(n), deems HAMILTON HEALTH CENTER, INC. to be an employee of the PHS, for the purposes of section 224, effective 1/1/2016 through 12/31/2016.

Section 224(a) of the PHS Act provides liability protection under the Federal Tort Claims Act (FTCA), 28 U.S.C. §§ 1346(b), 2672, or by alternative benefits provided by the United States where the availability of such benefits precludes a remedy under the FTCA, for damage for personal injury, including death, resulting from the performance of medical, surgical, dental, or related functions by PHS employees while acting within the scope of such employment. This protection is exclusive of any other civil action or proceeding. Coverage extends to deemed entities and their (1) officers; (2) governing board members; (3) full- and part-time employees; and (4) contractors who are licensed or certified individual health care practitioners providing full-time services (i.e., on average at least 32½ hours per week for the entity for the period of the contract), or, if providing an average of less than 32½ hours per week of such service, are licensed or certified providers in the fields of family practice, general internal medicine, general pediatrics, or obstetrics/gynecology. Volunteers are neither employees nor contractors and therefore are not eligible for FTCA coverage under FSHCAA.

This Notice of Deeming Action (NDA) is also confirmation of medical malpractice coverage for both HAMILTON HEALTH CENTER, INC. and its covered individuals as described above. This NDA, along with documentation confirming employment or contractor status with the deemed entity, may be used to show liability coverage for damage for personal injury, including death, resulting from the performance of medical, surgical, dental, or related functions by PHS employees while acting within the scope of such employment.

In addition, FTCA coverage is comparable to an "occurrence" policy without a monetary cap. Therefore, any coverage limits that may be mandated by other organizations are met.

This action is based on the information provided in your FTCA deeming application, as required under 42 U.S.C. § 233(h), with regard to your entity's: (1) implementation of appropriate policies and procedures to reduce the risk of malpractice and litigation; (2) review and verification of professional credentials and privileges, references, claims history, fitness, professional review organization findings, and licensure status of health professionals; (3) cooperation with the Department of Justice (DOJ) in the defense of claims and actions to prevent claims in the future; and (4) cooperation with DOJ in providing information related to previous malpractice claims history.

Deemed health centers must continue to receive funding under Section 330 of the PHS Act, 42 U.S.C. § 254b, in order to maintain coverage as a deemed PHS employee. If the deemed entity loses its Section 330 funding, such coverage will end immediately upon termination of the grant. In addition to the relevant statutory and regulatory requirements, every deemed health center is expected to follow HRSA's FTCA-related policies and procedures, which may be found online at http://www.bphc.hrsa.gov.

For further information, please contact your HRSA Project Officer as listed on your Notice of Grant Award or the Bureau of Primary Health Care (BPHC) Help Line at 1-877-974-2742 or bphchelpline@hrsa.gov.

Close Window

# Exhibit E

**CERTIFICATION**

I, Joseph J. Terz, Chief, Civil Division, United States Attorney's Office for the Middle District of Pennsylvania, acting pursuant to the provisions of 42 U.S.C. § 233(c), and by virtue of the authority vested in the United States Attorney by Appendix to 28 C.F.R. § 15.3, and his re-delegation of that authority to me, hereby certify that I have read the Complaint, the Joinder Complaint, and related court papers in this action along with other relevant material. On the basis of the information now available with respect to the allegations therein, I find that Kunali Dalal, M.D. was acting within the scope of her employment as an employee of the United States of America at all relevant times to the incident(s) out of which the following lawsuit arose: *Grant et al. v. UPMC Pinnacle Hospitals et al.*, 2019-cv-4072 (Dauphin Co. Pennsylvania Court of Common Pleas).


Joseph J. Terz
Assistant U.S. Attorney
Chief, Civil Division
228 Walnut Street, Suite 220
Harrisburg, PA 17108

Dated: 10/21/2020